**Larry ROE, Perry O. Hooper, Sr., James D. Martin, and Willie J. Williams, Individually and on Behalf of a Class of Persons, Plaintiffs,**

v.

**MOBILE COUNTY APPOINTING, BOARD, Honorable Lionel W. Noonan, Wilcox County Appointing Board, Honorable Jerry Boggan, As Representatives of Those Persons Who are Designated by Alabama State Law as the Appointing Boards in Each of Alabama's Counties and Those Persons Who Are Designated by Law to Maintain the Possession and Security of All Materials Relating to the November 8, 1994 General Election; James Bennett, in His Official Capacity as Secretary of State of the State of Alabama; State of Alabama, By and**

Through its Attorney General, Jeff Sessions; Clarence T. Hellums, Jr., a Representative of a Class of Persons who sought to have their ballots counted in the November 8, 1994, General Election; et al., Defendants,

Lucille Baxley, Defendant–Intervenor.

Civ. A. No. 94–0085–AH–S.

United States District Court,
S.D. Alabama,
Southern Division.

Sept. 29, 1995.

Albert L. Jordan, B. Glenn Murdock, Birmingham, AL, Joseph S. Johnston, J. Michael Druhan, Jr., Mobile, AL, Algert S. Agricola, Jr., Montgomery, AL, for plaintiffs.

William H. Pryor, Jr., Montgomery, AL, for State.

Joe R. Whatley, Jr., Sam Heldman, Birmingham, AL, Russell Jackson Drake, Tuscaloosa, AL, M. Clay Alspaugh, Birmingham, AL, for defendants.

### OPINION & ORDER

HOWARD, District Judge.

The United States Court of Appeals for the Eleventh Circuit remanded this action to this Court for a trial on the merits. *Roe v. State of Ala. by and through Evans,* 52 F.3d 300 (11th Cir.1995). Pursuant to the remand of the Eleventh Circuit, this Court held a bench trial of this action beginning on September 18, 1995 and ending on September 20, 1995. Based on the evidence introduced at the temporary restraining order hearing (November 17, 1994), the preliminary injunction hearing (December 5, 1994), and at the trial, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### I. FINDINGS OF FACT

The Eleventh Circuit ordered this Court to make findings of fact on seventeen issues. *Roe,* 52 F.3d at 302–303.

### A. AGREED FACTS

The parties have stipulated to findings of fact for several of the issues. The "Agreed Facts" section of the Joint Pretrial Document list the stipulated findings. Joint Pretrial Document, pp. 9–12. This Court adopts the agreed facts as the findings of the Court. Said findings supply the answers to the following issues raised by the Eleventh Circuit:

10. The number of votes initially certified[2] to the Secretary of State of the State of Alabama from each of Alabama's sixty-seven counties in favor of Sonny Hornsby, the Democratic candidate for Chief Justice of the Supreme Court of Alabama. *Roe,* 52 F.3d at 302.

   Answer: The number of votes initially certified to the Secretary of State of the State of Alabama from each of Alabama's sixty-seven counties in favor of Sonny Hornsby are set out in Plaintiffs' Exhibit 20A with the exception of Wilcox County. The number of votes from Wilcox County are set out in Plaintiffs' Exhibit 22.

11. The number of votes initially certified to the Secretary of State of the State of Alabama from each of Alabama's sixty-seven counties in favor of Perry O. Hooper, Sr., the Republican candidate for Chief Justice of the Supreme Court of Alabama. *Id.*

   Answer: See Plaintiffs' Exh. 20A and 21.

12. The number of votes initially certified to the Secretary of State of Alabama from each of Alabama's sixty-seven counties in favor of candidates for Chief Justice other than Sonny Hornsby or Perry O. Hooper, Sr., if any. *Id.* at 303.

   Answer: See Plaintiffs' Exh. 20A and 21.

13. The number of votes initially certified to the Governor of the State of Alabama from each of Alabama's sixty-seven counties in favor of Lucy Baxley, the Democratic candidate for Treasurer of the State of Alabama. *Id.*

   Answer: The number of votes initially certified to the Secretary of State from each of Alabama's sixty-seven

1. The Court notes that, although this litigation has been laborious, the competence, thoroughness, and dedication of counsel for all parties have made the labor pleasant. Rarely are all sides in a law suit so well represented.

2. "The 'number of votes initially certified' includes those vote totals originally sent to the Secretary of State or the Governor pursuant to sections 17–13–7 and 17–14–22 of the Alabama Election Code *before* the Montgomery County Circuit Court ordered that contested absentee ballots be counted. *See Odom v. Bennett,* No. 9402434–R (Montgomery County Cir.Ct., filed Nov. 16, 1994); *see generally* Ala.Code §§ 17–13–7, 17–14–22 (1988)" *Roe,* 52 F.3d at 302, n. 2 (emphasis in original).

counties in favor of Lucy Baxley, the Democratic candidate for treasurer, are set out in Plaintiffs' Exhibit 20B.

14. The number of votes initially certified to the Governor of the State of Alabama from each of Alabama's sixty-seven counties in favor of James D. Martin, the Republican candidate for Treasurer of the State of Alabama. *Id.*

Answer: See Plaintiffs' Exh. 20B.

15. The number of votes initially certified to the Governor of the State of Alabama from each of Alabama's sixty-seven counties in favor of candidates for Treasurer other than Lucy Baxley or James D. Martin, if any. *Id.*

Answer: See Plaintiffs' Exh. 20B.

17. If any of the vote totals initially certified from each county contained contested absentee ballots, whether those contested absentee ballots are in any way physically separable from the larger pool of ballots, and, if not, whether there exists any other method, short of obtaining the testimony of each voter who cast a contested absentee ballot, of identifying and counting contested absentee ballots for purposes of determining the effect of the contested absentee ballots on the elections for the offices of Chief Justice and Treasurer. *Id.*

Answer: The parties agree that the initially certified vote totals of four counties included votes from "contested absentee ballots." [3] Those counties are: Covington County, 11 contested absentee ballots; Randolph County, 5 votes; Washington County, 14 votes; Marion County, 19 votes. The contested ballots included in the above-listed vote totals are not physically separable from the larger pool of ballots, and there does not exist any method of identifying and counting such ballots, short of obtaining testimony from each voter who cast such a ballot.

### B. REGULAR PRACTICE

The Eleventh Circuit ordered the Court to make Findings of Fact on six issues that address the practice of the sixty-seven counties with respect to contested ballots prior to the November 8, 1994 election. *See Roe,* 52 F.3d at 302 (issues 1–6). The Court makes the following Findings of Fact with regard to the practice in Alabama Counties prior to the November 8 election.[4]

In support of their contention that the regular practice of Alabama counties prior to the November 8 election was to exclude contested absentee ballots, Plaintiffs[5] offered the answers to the interrogatories propounded by this Court[6] and the testimony of voting officials for many of the counties of Alabama, both live[7] and by deposition.

3. "Contested absentee ballots" are "those absentee ballots that were accompanied by an affidavit envelope that was signed by the voter but either: (1) was not properly notarized; or (2) was not properly witnessed by two adult witnesses." *Roe,* 52 F.3d at 302, n. 1.

4. The Eleventh Circuit did not define the parameters of this Court's inquiry. However, this Court limited the discovery to no elections prior to 1980. The Court did so because the Alabama Legislature amended Ala.Code § 17–10–7 (1975) in 1980 to allow for the witnessing of an absentee voter's signature by two witnesses in addition to notarization. In addition, the Attorney General for the State of Alabama informed the Court that records from elections prior to 1980 and officials involved in those elections would be extremely difficult to locate, if such evidence even exists.

5. Defendant State of Alabama voiced no objections to Plaintiffs' evidence introduced at trial.

Alabama filed an Answer admitting all of Plaintiffs' contentions in January 1995 and has supported Plaintiffs' allegations throughout the rest of this litigation.

6. Magistrate Judge Steele worked with the parties during discovery to determine how the interrogatories should issue. The interrogatories were directed to the circuit clerks of each county and Judge Steele attached an Order to the interrogatories explaining to the clerks that the answers should come from the clerk's personal knowledge and where the clerk had not such personal knowledge the clerk should list the source of the information. Plaintiffs introduced a copy of the interrogatories and Judge Steele's Order. (Plaintiffs' Exhibit 16.100)

7. The Court expresses its appreciation for the commitment and dedication of the county voting officials who testified at trial. Many of the officials had to drive long distances and sit in court for several hours before testifying. Democracy

## 1. Stipulated Interrogatories

Defendant Hellums Class (formerly Davis Class) stipulated to the admissibility of the answers to the interrogatories for twenty-four counties.[8] The twenty-four counties are: Barbour (Plaintiffs' Exh. 16.103), Bullock (Plaintiffs' Exh. 16.106), Butler (Plaintiffs' Exh. 16.107), Chilton (Plaintiffs' Exh. 16.), Clarke (Plaintiffs' Exh. 16.113), Cleburne (Plaintiffs' Exh. 16.115), Coffee (Plaintiffs' Exh. 16.116), Conecuh (Plaintiffs' Exh. 16.118), Crenshaw (Plaintiffs' Exh. 16.121), Cullman (Plaintiffs' Exh. 16.122), Dallas (Plaintiffs' Exh. 16.124), Dekalb (Plaintiffs' Exh. 16.125), Geneva (Plaintiffs' Exh. 16.131), Greene (Plaintiffs' Exh. 16.132), Lee (Plaintiffs' Exh. 16.141), Limestone (Plaintiffs' Exh. 16.142), Lowndes (Plaintiffs' Exh. 16.143), Madison (Plaintiffs' Exh. 16.145), Mobile (Plaintiffs' Exh. 16.149), Monroe (Plaintiffs' Exh. 16.150), Morgan (Plaintiffs' Exh. 16.152), Pickens (Plaintiffs' Exh. 16.154), Russell (Plaintiffs' Exh. 16.157), Shelby (Plaintiffs' Exh. 16.159), and Walker (Plaintiffs' Exh. 16.164). The Court has reviewed these counties' answers to the interrogatories and, based on those answers, the Court makes the following findings:

1. The extent to which, if at all, ballots such as the ballots at issue in this case were regularly excluded from the vote count in Alabama counties prior to the November 8 election. *Roe,* 52 F.3d at 302.

The Court **FINDS** that for the above-listed, twenty-four counties the regular practice prior to the November 8 election was **TO EXCLUDE** ballots such as the contested absentee ballots.

8. Whether county voting officials charged with running the elections instructed prospective voters that ballots such as the contested absentee ballots might be counted and, if so, the extent of this practice on the part of county voting officials. *Id.*

depends upon citizens such as these officials who are willing to sacrifice time and energy without tangible encouragement.

8. Although Defendant Hellums did stipulated to the admissibility of the answers to the interrogatories from twenty-four counties, Defendant

The Court **FINDS** that **NO** county voting official charged with running the election in the above-listed, twenty-four counties instructed prospective voters that ballots such as the contested absentee ballots might be counted.

16. Whether any of the vote totals initially certified from any county contained any contested absentee ballots. *Id.* at 303.

The Court **FINDS** none of the vote totals initially certified from the above-listed, twenty-four counties contained any contested absentee ballots.

## 2. Contested Evidence

Defendant Hellums contested the evidence presented by Plaintiffs with regard to the remaining forty-three counties. Defendant Hellums raised the following general objections to the remaining answers to interrogatories: hearsay and not the best evidence. The Court overruled the Hellums objections to all of the answers except for the answers submitted on behalf of Sumter County. The Court did sustain some objections to the answers to certain questions submitted by some of the counties. However, the majority of the interrogatories were admitted in their entirety. The Court **FINDS** that such interrogatories are exceptions to the hearsay rule under Rule 803(24). The Court **FINDS** that the answers have "equivalent circumstantial guarantees of trustworthiness" and that Plaintiffs introduced the answers as evidence of a material fact, the answers are more probative on the point for which it is offered than any other evidence, and the general purposes of the Federal Rules of Evidence will best be served by the admission of the answers. The record is clear that Defendant Hellums contends that the best evidence to answer the Eleventh Circuit's questions is the actual affidavit envelope. This Court explained its finding that the actual envelopes are irrelevant to the questions pro-

maintained its objection based on "best evidence" grounds for all of the answers to the interrogatories, including the stipulated answers. (Plaintiffs' Exh. 129). The Court overruled Hellums's "best evidence" objection for the reasons stated in the Court's "Response to the Petition for Writ of Mandamus." *See* Addendum A.

pounded by the Eleventh Circuit in this Court's "Response to the Petition for Writ of Mandamus." The Court adopts said Response as the holding of this Court on the issue of Hellums's objection to the answers to interrogatories as not the best evidence. *See* Addendum A to this Opinion. In addition to the Court's earlier reasoning, the Court notes that with the exception of Washington County, Hellums failed to produce a scintilla of evidence that any county regularly counted ballots such as the contested ballots prior to the November 8 election.

The Court makes the following findings with regard to the remaining forty-three counties:

1. **Washington County:** The only evidence introduced on the issue of the practice in Washington County was the answers to interrogatories as completed by Steven Grimes, Circuit Clerk of Washington County. (Plaintiffs' Exh. 16.165). Mr. Grimes won his seat in the November 8 election and, therefore, relied on Sheriff William Wheat and absentee poll worker Dorothy Sheffield for information on the practice of Washington County. Based on the answers of Washington County, the Court **FINDS**

 a. Washington County regularly **COUNTED** ballots such as the contested absentee ballots prior to the November 8 election.

 b. Washington County **COUNTED** ballots such as the contested absentee ballots on November 8.

 c. A reasonable voter **WOULD NOT HAVE KNOWN** that ballots such as the contested absentee ballots might be counted. The Court makes this finding based on the answer to interrogatory 13 that states that no officials charged with running the elections in Washington County instructed voters that unwitnessed or unnotarized ballots would or might be counted. Therefore, a reasonable voter would look to the affidavit on

the absentee envelope, which reads: "Note: Your signature must be witnessed by either: A notary public or other officer authorized to acknowledge oaths or two witnesses 18 years of age or older." Ala.Code § 17–10–7 (1975). The Court finds that a reasonable voter, without contrary official instruction, would have known that such language is a mandatory requirement and that their vote would not be counted unless their signature had been witnessed by two adult witnesses or notarized.

 d. The percentage of total votes for statewide office cast by absentee ballot (both contested and other) in the November 8 election: **2.9%**

 e. The percentage of total votes cast by contested absentee ballot in the November 8 election: **0.2%**

 f. The percentage of the total votes for statewide office cast by absentee ballot (whether the affidavit was complete or not) in the previous two elections for statewide office: **2.7%.**

 g. As stated above, the Court **FINDS** that no Washington County voting official charged with running the elections instructed prospective voters that ballots such as the contested absentee ballots might be counted.

 h. The vote total initially certified from Washington County to the Secretary of State for the November 8, 1994 general election, included contested ballots. The Court **FINDS** that Washington County does not have a reliable vote total that does not include the contested ballots.[9]

 i. The Court **FINDS** that the number of contested absentee ballots contained in Washington County's initial vote total is **14.**

 j. The contested absentee ballots are in no way physically separable from the larger pool of ballots and there is no

---

**9.** Upon first glance, it is confusing how a county could know the number of contested absentee ballots cast, but not have a reliable vote total that does not include the contested ballots. However, such a result is not a contradiction. A voting official can know how many contested ballots were cast records that show the number of bal-

lots that came from envelopes with affidavits that did not include the notarized or witnessed signature of the voter. However, those ballots are separated from their envelopes prior to counting the votes. Therefore, there is no way to know which votes in a vote total came from contested ballots.

method, short of obtaining the testimony of each voter who cast such a ballot, of identifying and counting contested absentee ballots for purposes of determining the effect of the contested absentee ballots on the elections for the offices of Chief Justice and Treasurer.

2. **Autauga County:** Based upon the answers to the interrogatories completed by Fred Posey, Circuit Clerk of Autauga County from 1941 to present except for three years of military service in World War II, (Plaintiffs' Exh. 16.101) and the live testimony of Rick Allen, absentee ballot official for the past twenty years including 1994, the Court **FINDS:**

    a. Autauga County regularly **EXCLUDED** ballots such as the contested ballots from the vote count prior to the November 8 election.

    b. Autauga County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

    c. Autauga County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

3. **Baldwin County:** Based upon the answers to the interrogatories, as amended, completed and amended by Jackie Calhoun (Plaintiffs' Exh. 16.102), Circuit Clerk of Baldwin County from 1989 to present, and upon Ms. Calhoun's testimony at trial, the Court **FINDS:**

    a. Baldwin County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

    b. Baldwin County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

    c. Baldwin County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

4. **Bibb County:** Based upon the answers to interrogatories completed by John H. Stacey, Circuit Clerk of Bibb County elected in 1994, (Plaintiffs' Exh. 16.104), the testimony at trial of Merita Suttle, absentee official for ten years prior to 1994, and the testimony at trial of Kathleen Vanderford, absentee official for five years prior to and including 1994, the Court **FINDS:**

    a. Bibb County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

    b. Bibb County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

    c. Bibb County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

5. **Blount County:** Based upon the answers to the interrogatories completed by Michael Criswell (Plaintiffs' Exh. 16.105), Circuit Clerk of Blount County from 1989 to present, and upon the testimony at trial of John Green, absentee election manager for every election from 1977 to 1989, the Court **FINDS:**

    a. Blount County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

    b. Blount County voting officials never instructed prospective votes that ballots such as the contested ballots might be counted.

    c. Blount County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

6. **Calhoun County:** Based upon the answers to the interrogatories completed by Ted Hooks (Plaintiffs' Exh. 16.108), Circuit Clerk of Calhoun County elected in 1994, and the testimony at trial of Maurice Forsyth, absentee election official for approximately ten years including the 1994 election, the Court **FINDS:**

    a. Calhoun County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

    b. Calhoun County voting officials never instructed prospective voters that ballots

such as the contested ballots might be counted.

c. Calhoun County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

7. **Chambers County:** The Court sustained Defendant Hellums's hearsay objection to all of the answers to the interrogatories with the exception of answers to interrogatories 8, 9, and 10 (Plaintiffs' Exhibit 16.109). Therefore, based upon the answers to interrogatories 8, 9, and 10 completed by Charles Story, Circuit Clerk of Chambers County elected in 1994, the testimony at trial of Julia Stewart, absentee counter for 1992 and 1994 elections, and the testimony at trial of Stella Pierce, Circuit Clerk of Chambers County from 1964 to 1991, the Court **FINDS:**

a. Chambers County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Chambers County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Chambers County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

8. **Cherokee County:** Based upon the answers to the interrogatories completed by Carolyn Smith (Plaintiffs' Exh. 16.110), Circuit Clerk for Cherokee County from 1989 to present, the Court **FINDS:**

a. Cherokee County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Cherokee County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Cherokee County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

9. **Choctaw County:** The Court sustained Defendant Hellums' hearsay objection

to the answer to interrogatory 8 of the interrogatories propounded to the Circuit Clerk of Choctaw County. However, based upon the answers to all interrogatories except the answer to number 8, completed by Donald Gibson (Plaintiffs' Exh. 16.112), Circuit Clerk for Choctaw County from 1979 to present and the testimony at trial of LeAndrew Woods, absentee election official since 1984, the Court **FINDS:**

a. Choctaw County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Choctaw County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Choctaw County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

10. **Clay County:** Based upon the answers to the interrogatories completed by Jeff Colburn (Plaintiffs' Exh. 16.114), Circuit Clerk for Clay County elected in 1994, and the testimony at trial of Pat Allen, absentee election official since 1984, the Court **FINDS:**

a. Clay County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Clay County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Clay County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

11. **Colbert County:** Based upon the answers to the interrogatories completed by C. Phillip Bowling (Plaintiffs' Exh. 16.117), Circuit Clerk for Colbert County from 1983 to present, the Court **FINDS:**

a. Colbert County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Colbert County voting officials never instructed prospective voters that ballots

such as the contested ballots might be counted.

c. Colbert County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

12. **Coosa County:** Based upon the answers to the interrogatories completed by Gerald Parker (Plaintiffs' Exh. 16.119), Circuit Clerk for Coosa County from 1977 to present, and the testimony introduced by deposition of Mr. Parker, Cordelia Gandy, an employee of the Circuit Clerk's Office who has worked in ten elections over the last twenty-one years, and Melinda Brown, Probate Judge of Coosa County since 1985, the Court **FINDS:**

a. Coosa County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Coosa County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Coosa County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

13. **Covington County:** Based upon the answers to the interrogatories completed by Roger Powell (Plaintiffs' Exhibit 16.120), Circuit Clerk for Covington County from 1989 to present and the testimony introduced by deposition of Mr. Powell, the Court **FINDS:**

a. Covington County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Covington County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Covington County **INCLUDED** eleven (11) contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

   i. Covington County does not have a reliable vote total that does not include votes from contested ballots.

d. The contested absentee ballots are in no way physically separable from the larger pool of ballots and there is no way, short of obtaining the testimony of each voter who cast a contested ballot, of identifying and counting contested absentee ballots for purposes of determining the effect of the contested ballots on the elections for the offices of Chief Justice and Treasurer.

14. **Dale County:** Based upon the answers to the interrogatories, as amended, completed and amended by Mary Bludsworth (Plaintiffs' Exh. 16.123), Circuit Clerk for Dale County elected in 1994, and the testimony at trial of Celeste Sneed, absentee ballot official for Dale County since 1975, the Court **FINDS:**

a. Dale County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Dale County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Dale County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

15. **Elmore County:** Based Upon the answers to the interrogatories completed by Larry Dozier, Circuit Clerk for Elmore County elected in 1994, and the testimony at trial of Joy Hill, absentee ballot official since 1988, the Court **FINDS:**

a. Elmore County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Elmore County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Elmore County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

16. **Escambia County:** Based upon the answers to the interrogatories, as amended, completed and amended by James Taylor

(Plaintiffs' Exh. 16.127), Circuit Clerk of Escambia County elected in 1994, the testimony at trial of Marquettia Chapellia, absentee ballot official for the past ten years not including 1994, and Vera Wilkerson, absentee ballot official for 1994, the Court **FINDS:**

   a. Escambia County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

   b. Escambia County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

   c. Escambia County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

17. **Etowah County:** Based upon the answers to the interrogatories completed by Billy Yates (Plaintiffs' Exh. 16.128), Circuit Clerk for Etowah County from 1983 to present, and the testimony at trial by Zane Smith, absentee ballot clerk for the 1994 general election, the Court **FINDS:**

   a. Etowah County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

   b. Etowah County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

   c. Etowah County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

18. **Fayette County:** Based upon the answers to the interrogatories completed by J. Eddy Smith (Plaintiffs' Exh. 16.129), Circuit Clerk for Fayette County elected in 1994, and the testimony at trial of Jesse Cotton, an election official since 1934 and an absentee election official since 1975, the Court **FINDS:**

   a. Fayette County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

   b. Fayette County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

   c. Fayette County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

19. **Franklin County:** Based upon the answers to the interrogatories completed by J.T. Newton (Plaintiffs' Exh. 16.130), Circuit Clerk for Franklin County from 1991 to present, and the testimony at trial of Danny Brown, absentee ballot inspector for the 1992 and 1994 elections, the Court **FINDS:**

   a. Franklin County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

   b. Franklin County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

   c. Franklin County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

20. **Hale County:** Based upon the answers to the interrogatories, as amended, completed and amended by Betty Gayle Pate (Plaintiffs' Exh. 16.133), Circuit Clerk for Hale County from 1989 to present, and the testimony at trial of Ruth Gates, absentee official since 1970, the Court **FINDS:**

   a. Hale County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

   b. Hale County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

   c. Hale County did not include any contested ballots in their initial certification to the Secretary of State, for the November 8, 1994, general election.

21. **Henry County:** Based upon the answers to the interrogatories completed by Connie Burdeshaw (Plaintiffs' Exh. 16.134), Circuit Clerk for Henry County from 1983 to present, the Court **FINDS:**

   a. Henry County regularly **EXCLUDED** ballots such as the contested absentee

ballots from the vote count in elections prior to the November 8 election.

b. Henry County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Henry County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

22. **Houston County:** The Court sustained Defendant Hellums' "improper conclusion" objection to the answer to interrogatory 8 of the interrogatories propounded to the Circuit Clerk of Houston County. However, based upon the answers to the interrogatories, with the exception of answer 8, completed by Judy Byrd (Plaintiffs' Exh. 16.135), Circuit Clerk for Houston County from 1993 to present, and the testimony at trial of Quay Fortner, absentee ballot official for the last forty years including 1994, the Court **FINDS:**

a. Houston County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Houston County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Houston County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

23. **Jackson County:** The answers to interrogatories turned in by Jackson County are incomplete. Circuit Clerk Leonard Griggs, Clerk from 1983 to present, did not answer any of the interrogatories. The Court makes no findings based upon Plaintiffs' Exhibit 16.136. However, based upon the testimony introduced by deposition of Polly Long, an absentee official for approximately seven years including 1994, and of Judge Robert Gentry, Probate Judge for Jackson County for the last thirty-six years, not including 1994, the Court **FINDS:**

a. Jackson County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Jackson County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Jackson County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

24. **Jefferson County (Birmingham Division and Bessemer Division):** Based upon the answers to the interrogatories completed by Polly Conradi (Plaintiffs' Exh. 16.137A), Circuit Clerk for the Jefferson County Birmingham Division from 1976 to present, and the answers to the interrogatories completed by Earl Carter, Jr. (Plaintiffs' Exh. 16.136B), Circuit Clerk for Jefferson Count Bessemer Division from 1989 to present, the Court **FINDS:**

a. Jefferson County (Birmingham and Bessemer Divisions) regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Jefferson County (Birmingham and Bessemer Divisions) voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Jefferson County (Birmingham and Bessemer Divisions) did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

25. **Lamar County:** Based upon the answers to the interrogatories completed by Curtis Graham (Plaintiffs' Exh. 16.138), Circuit Clerk for Lamar County elected in 1994, and the testimony at trial of Alex Brown, attorney for the Lamar County Appointing Board since 1978, the Court **FINDS:**

a. Lamar County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Lamar County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Lamar County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

26. **Lauderdale County:** Based upon the answers to the interrogatories completed by Kenneth Austin (Plaintiffs' Exh. 16.139), Circuit Clerk for Lauderdale County from 1983 to present, the Court **FINDS:**

a. Lauderdale County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Lauderdale County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Lauderdale County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

27. **Lawrence County:** The Court sustained Defendant Hellums's hearsay objection to all of the answers to interrogatories completed by Lawrence County. However, based upon the testimony at trial of Joyce Sanford, absentee election official for approximately twenty years including 1994, and Edwina Jackson, absentee election official for approximately twenty years including 1994, the Court **FINDS:**

a. Lawrence County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Lawrence County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Lawrence County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

28. **Lowndes County:** Based upon the answers to the interrogatories completed by Naomi Gibson–Pritchett (Plaintiffs' Exh. 16.143), Circuit Clerk for Lowndes County, elected in 1994, Ms. Gibson–Pritchett's letter to Deputy Attorney General William Pryor, Jr. (Defendant Hellums's Exh. 23), the testimony at trial of Voncile Strickland, absentee ballot official since 1982, and the testimony at trial of Mattie Taylor–Peterson, absentee ballot official prior to and including 1994, the Court **FINDS:**

a. Lowndes County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Lowndes County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Lowndes County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

29. **Macon County:** Based upon the answers to the interrogatories completed by Eddie Mallard (Plaintiffs' Exh. 16.144), Circuit Clerk for Macon County from 1977 to present, the Court **FINDS:**

a. Macon County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Macon County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Macon County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994 general election.

30. **Marengo County:** Based upon the answers to the interrogatories completed by Rusty Nichols (Plaintiffs' Exh. 16.146), Circuit Clerk for Marengo County, elected in 1994, and the testimony at trial of Vicki Barnes, absentee election official for 1994, the Court **FINDS:**

a. Marengo County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Marengo County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Marengo County did not include any contested ballots in their initial certifica-

tion to the Secretary of State for the November 8, 1994, general election.

31. **Marion County:** Based upon the answers to the interrogatories completed by James Garrard (Plaintiffs' Exh. 16.147), Circuit Clerk for Marion County from 1989 to present, and the testimony introduced by deposition of Mr. Garrard, the Court **FINDS:**

   a. Marion County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

   b. Marion County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

   c. Marion County **INCLUDED** nineteen (19) contested ballots in their initial certification to the Secretary of State for the November 8, 1994 general election.

     i. Marion County does not have a reliable vote total that does not include votes from contested ballots.

   d. The contested absentee ballots are in no way physically separable from the larger pool of ballots and there is no way, short of obtaining the testimony of each voter who cast a contested ballot, of identifying and counting contested absentee ballots for purposes of determining the effect of the contested ballots on the elections for the offices of Chief Justice and Treasurer.

32. **Marshall County:** Based upon the answers to the interrogatories completed by Sherry Ussery (Plaintiffs' Exh. 16.148), Circuit Clerk for Marshall County, elected in 1994, and the testimony at trial of Louise Sahag, absentee election official since 1970, the Court **FINDS:**

   a. Marshall County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

   b. Marshall County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

   c. Marshall County did not include any contested ballots in their initial certifica-

tion to the Secretary of State for the November 8, 1994, general election.

33. **Montgomery County:** Based upon the answers to the interrogatories completed by Debra Hackett (Plaintiffs' Exh. 16.151), Circuit Clerk for Montgomery County from 1983 to present, and the testimony introduced by deposition of Ms. Hackett, the Court **FINDS:**

   a. Montgomery County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

   b. Montgomery County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

   c. Montgomery County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

34. **Perry County:** The answers to the interrogatories propounded to Perry County and completed by Mary Moore (Plaintiffs' Exh. 16.153), Circuit Clerk for Perry County, are incomplete. However, based upon the answers that are complete, the Court **FINDS:**

   a. Perry County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

   b. Ms. Moore did not answer interrogatory 13, therefore, the Court makes **NO FINDING** with regard to what Perry County voting officials may or may not have instructed prospective voters with regard to ballots such as the contested ballots.

   c. Perry County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

35. **Pike County:** Based upon the answers to the interrogatories, as amended, completed and amended by Brenda Peacock (Plaintiffs' Exh. 16.155), Circuit Clerk for Pike County from 1989 to present, and the testimony at trial of Rudolph Shelly, absen-

tee election official for twelve years prior to and including 1994, the Court **FINDS:**

a. Pike County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Pike County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Pike County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

36. **Randolph County:** Based upon the answers to the interrogatories completed by Kim Benefield (Plaintiffs' Exh. 16.156), Circuit Clerk for Randolph County from 1988 to present, the Court **FINDS:**

a. Randolph County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Randolph County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Randolph County **INCLUDED** five (5) contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

i. Randolph County does not have a reliable vote total that does not include votes from contested ballots.

d. The contested absentee ballots are in no way physically separable from the larger pool of ballots and there is no way, short of obtaining the testimony of each voter who cast a contested ballot, of identifying and counting contested absentee ballots for purposes of determining the effect of the contested ballots on the elections for the offices of Chief Justice and Treasurer.

37. **St. Clair County:** Based upon the answers to the interrogatories, as amended, completed and amended by Jean Browning (Plaintiffs' Exh. 16.158), Circuit Clerk for St. Clair County from 1989 to present, the Court **FINDS:**

a. St. Clair County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. St. Clair County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. St. Clair County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

38. **Sumter County:** The Court sustained Defendant Hellums's hearsay objection to all of the answers to the interrogatories completed by Sumter County. However, based upon the testimony introduced by deposition of Carole Smith, Circuit Clerk of Sumter County from 1991 to January, 1995, Deputy Circuit Clerk from 1978 to 1991, the Court **FINDS:**

a. Sumter County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Sumter County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Sumter County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994 general election.

39. **Talladega County:** Based upon the answers to the interrogatories, as amended, completed and amended by Clarence Haynes (Plaintiffs' Exh. 16.161), Circuit Clerk for Talladega County, elected in 1994, and the testimony at trial of Joanna Johnson, absentee election official for fifteen years prior to and including 1994, the Court **FINDS:**

a. Talladega County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Talladega County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Talladega County did not include any contested ballots in their initial certifica-

tion to the Secretary of State for the November 8, 1994, general election.

40. **Tallapoosa County:** Based upon the answers to the interrogatories completed by Frank Lucas (Plaintiffs' Exh. 16.162), Circuit Clerk for Tallapoosa County from 1989 through 1994, the testimony at trial of Wade Acton, the current Circuit Clerk and an absentee election official for three elections prior to 1994, the affidavit of Wade Acton signed on June 2, 1995 (Defendant Hellums's Exh. 47), and the testimony at trial of Wayne Thompson, absentee election official for approximately twenty years including 1994, the Court **FINDS:**

a. Tallapoosa County regularly **EX-CLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Tallapoosa County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Tallapoosa County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

41. **Tuscaloosa County:** Based upon the answers to the interrogatories, as amended, completed and amended by Doris Turner (Plaintiffs' Exh. 16.163), Circuit Clerk for Tuscaloosa County from 1977 to present, and the testimony at trial of Ike Espy, absentee election official since 1974, the Court **FINDS:**

a. Tuscaloosa County regularly **EX-CLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Tuscaloosa County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Tuscaloosa County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

42. **Wilcox County:** Based upon the answers to the interrogatories completed by Willie Powell (Plaintiffs' Exh. 16.166), Circuit Clerk for Wilcox County from 1983 to present, and the testimony at trial of Sandra Henderson, absentee election official for approximately twelve years including 1994, the Court **FINDS:**

a. Wilcox County regularly **EXCLUDED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Wilcox County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Wilcox County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

43. **Winston County:** Based upon the answers to the interrogatories completed by W.F. Bailey (Plaintiffs' Exh. 16.167), Circuit Clerk for Winston County from 1989 to present, the Court **FINDS:**

a. Winston County regularly **EXCLUD-ED** ballots such as the contested absentee ballots from the vote count in elections prior to the November 8 election.

b. Winston County voting officials never instructed prospective voters that ballots such as the contested ballots might be counted.

c. Winston County did not include any contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election.

The Court **FINDS** that it was the regular practice of the counties of Alabama, except for Washington County, to regularly **EX-CLUDE** ballots such as the contested absentee ballots from the vote count in elections prior to November 8, 1994. The Court **FINDS** that four counties included a total of forty-nine (49) ballots such as the contested ballots in their initial certification to the Secretary of State for the November 8, 1994, general election. The Court **FINDS** that none of the four counties that included contested ballots have reliable vote totals that do not include votes that came from contested ballots. Finally, the Court **FINDS** that no voting official in any of the sixty-seven counties of Alabama ever instructed any prospec-

tive voter that a ballot such as the contested absentee ballots might be counted.

## C. POSITIONS OF STATE OFFICIALS

7. Whether state officials such as the Attorney General of Alabama or the Secretary of State of Alabama have taken consistent positions regarding whether ballots such as the contested absentee ballots are to be counted or excluded and, if so, the form in which such positions were communicated to the average voter or county voting official and the time at which such positions were taken.

*Roe*, 52 F.3d at 302.

The Court makes the following findings of fact with regard to the positions taken by the Secretaries of State and Attorneys General of Alabama from 1980 through November 8, 1994.

### 1. Jim Bennett

#### a. Secretary of State 1993 to present

Secretary Bennett testified at the hearing on the Preliminary Injunction held on December 5, 1994. Secretary Bennett testified that it is his practice to rely on opinions of the Attorney General and that to his knowledge Secretaries of State previous to his term also relied on opinions of the Attorney General. (R. at 50). Secretary Bennett testified that previous Secretaries relied on the opinion of Attorney General Charles A. Graddick, dated September 12, 1980 (Plaintiffs' Exh. 7). (R. at 50). Said opinion states in pertinent part:

> If, upon examination, the affidavit obviously does not comply with Alabama law; that is, if it is not properly witnessed or notarized, is not signed by the voter, or does not otherwise contain sufficient information to determine that the person is a qualified elector and is entitled to vote absentee, the ballot should not be counted.

Attorney General's opinion 80–0051, p. 3. Secretary Bennett relied on the above-cited Opinion to help prepare the Sixth Edition of the Alabama Election Handbook (Plaintiffs' Exh. 8). (R. at 51–52). The Manual quotes the above language from opinion 80–0051 on page 257 of the Manual. Secretary Bennett

testified that the Manual is meant to be distributed to county election officials. (R. at 53). Secretary Bennett testified that "[i]t is my understanding that ballots that are not witnessed by two people over the age of 18 or notarized are not counted...." (R. at 54).

Significantly, Secretary Bennett testified:

Q. So is it your testimony, Mr. Bennett, that the practice with regard to the counting of absentee ballots that neither have notarized signatures or witnessed signatures has been consistent since at least 1980 until the announcement of the order by Judge Reese in the case of Odom versus Bennett in the Montgomery County Circuit Court?

A. It is my understanding that ballots that are not witnessed by two people over the age of 18 or notarized are not counted prior to the Montgomery County court case.

(R. at 54). Judge Reese entered his Order on November 17, 1994, six days **after** the November 8, 1994 general election.

The Court **FINDS** that the position of Secretary of State Bennett is and was that ballots such as the contested absentee ballots were not to be counted. The Court **FINDS** that the source for the distribution of such information was the Sixth Edition of the Alabama Election Handbook.

Secretary Bennett ran as a Democrat in the General Election of November 8, 1994, along with Democrats Sonny Hornsby and Don Siegelman, and although he was placed in an awkward position in this litigation, and was subjected to lengthy examination and cross-examination, the Court was impressed with the candor and straightforwardness of Secretary Bennett in responding to all questions, including those posed to him by the Court. In short, the Court found Secretary Bennett's testimony to be entirely credible.

### 2. Charles Graddick

#### a. Attorney General 1979–1987

Former Attorney General Charles Graddick testified at trial. General Graddick confirmed the position stated in his Attorney General opinion 80–0051. General Graddick testified that it was his understanding that

ballots such as the contested absentee ballots should not be counted. Graddick testified that he distributed this information by means of his opinion and by a memorandum prepared by General Graddick and Secretary of State Don Siegelman dated August 12, 1980 (Plaintiffs' Exh. 65).

The Court **FINDS** that Attorney General Graddick's unequivocal position is that ballots such as the contested absentee ballots were not to be counted. The Court **FINDS** that General Graddick distributed this information through both his Attorney General's opinion and the memorandum of August 12, 1980 authored jointly with then Secretary of State Don Siegelman.

### 3. Don Siegelman

 a. Secretary of State 1979 to 1987

 b. Attorney General 1987 to 1991

Defendant Hellums called Lieutenant Governor Don Siegelman to testify as to the position his office took when he was Secretary of State and when he was Attorney General. Governor Siegelman testified that he had no knowledge of the practice of any of the election officials in any of the counties of Alabama as such practice related to absentee ballots such as the contested absentee ballots. Lieutenant Governor Siegelman testified that his understanding of the law was that an absentee ballot accompanied by an affidavit envelope that lacked the voter's signature or that was signed but either: (1) was not properly notarized; or (2) was not properly witnessed by two adult witnesses was as follows:

 1. The absentee voting official who discovered the incomplete affidavit would first determine whether the putative voter was on the absentee voter register. If not the ballot should have been discarded.

 2. If the voter's name was on the register the absentee ballot official should stamp the ballot "Challenged" and then place the ballot in the box to be counted.

 3. Any counted ballots stamped "Challenged" should be forwarded to the county's district attorney's office for an investigation.

Lieutenant Governor Siegelman had no recollection of ever instructing any voting official to take the above-listed actions when faced with an unsigned or unnotarized or unwitnessed ballot.

On August 12, 1980, then Secretary of State Siegelman and Attorney General Charles Graddick sent a memorandum to "all Circuit Clerks and Registers" concerning absentee voting. (Plaintiffs' Exh. 65). Page 3 of the memorandum states in pertinent part:

> If the ballot does not comply with Alabama law, i.e., it is not properly witnessed or notarized; not signed by the voter, or does not otherwise contain sufficient information to determine that such person is a qualified elector and entitled to vote absentee, the ballot should not be counted. In most other cases, when a ballot is challenged, the ballot should be counted; the affidavit, however, should be marked challenged with the basis of the challenge listed and turned over to the District Attorney for investigation.

Lieutenant Governor Siegelman testified that such language expressed his understanding and is not contradictory to his present position. The Court **FINDS** his testimony to be diametrically opposed to the instructions he issued to election officials while he was Secretary of State and there is no credible evidence he ever communicated his current position to anyone while he was Secretary of State. He failed to provide a rational explanation of his present position and the Court found his testimony to be unworthy of belief. The memorandum instructs "Circuit Clerks and Registers" not to count ballots that do not comply with Alabama law, that is, ballots which are not signed by the voter, are not witnessed by two witnesses or notarized, and Lieutenant Governor Siegelman's efforts to change the import of such instructions are incredible.

Lieutenant Governor Siegelman also testified about the instructions contained in the State of Alabama Election Officials' Handbook produced by Dr. Robert S. Mountjoy, Office of Public Service and Research, Auburn University (Plaintiffs' Exh. 64). Governor Siegelman testified that his office worked with Dr. Mountjoy in preparing the Hand-

book and that the Secretary of State's Office distributed the Handbook to the election officials in all sixty-seven counties. The Handbook states on p. 7–6 in pertinent part:

> If, upon examination, the affidavit obviously does not comply with Alabama law; that is, if it is not properly witnessed or notarized, is not signed by the voter, or does not otherwise contain sufficient information to determine that the person is a qualified elector and is entitled to vote absentee, the ballot should not be counted.

Again, he testified that the above-cited language does not mean what it clearly states, but insisted that it matched his present interpretation. However, he pointed out that he had no idea how the election officials interpreted such Handbook. The Court **FINDS** Siegelman's testimony with regard to the Alabama Election Officials' Handbook, prepared by Dr. Mountjoy to be unbelievable.

Finally, Lieutenant Governor Siegelman testified about the Alabama Election Handbook prepared by the Alabama Law Institute. The Third and Fourth Editions of the Handbook were published and distributed during Governor Siegelman's terms as Secretary of State and the Fifth Edition was published and distributed during his term as Attorney General. *See* Plaintiffs' Exh. 23. The Third Edition went to all probate judges and to each member of the Legislature and the Fourth and Fifth Editions were distributed to all sheriffs, in addition to probate judges and members of the Legislature. The "Foreword" to the Third Edition states that "the reorganization of this book emanated from a suggestion of Don Siegelman, Alabama Secretary of State...." (Plaintiffs' Exh. 24). All three editions distributed during Siegelman's tenure state in pertinent part:

> NOTE: ALL PERSONS VOTING BY ABSENTEE BALLOT MUST HAVE THEIR BALLOTS NOTARIZED BY A NOTARY PUBLIC OR ANYONE AUTHORIZED TO NOTARIZE DOCUMENTS OR TWO WITNESSES 18 YEARS OR OLDER. OTHERWISE, THE BALLOT WILL NOT BE COUNTED.

(Plaintiffs' Exhibits 24, 25, and 26) (uppercase in original).

Lieutenant Governor Siegelman testified that he had no recollection of ever having seen any of the three Handbooks. He testified that his office worked closely with Dr. Mountjoy and Lieutenant Governor Siegelman "did not trust" the work coming out of the Alabama Law Institute. Lieutenant Governor Siegelman testified that had anyone asked him about the Handbooks prepared by the Alabama Law Institute, he would have instructed them not to rely upon them. However, he never told any election official not to rely on the Handbook. Furthermore, Lieutenant Governor Siegelman claimed to have no knowledge that the Alabama Law Institute is a body created by statute "as an official advisory law revision and law reform agency of the state of Alabama." Ala.Code § 29–8–1 (1975). In addition, he was on the governing body of the institute as the Attorney General of Alabama. *Id.* The Court **FINDS** Lieutenant Governor Siegelman's testimony with regard to the Alabama Election Handbook bizarre. While the Court recognizes that as an elected official Governor Siegelman has been a part of many organizations that may not have come to his attention, it stretches credibility to assert that, as Chief Election Official of the State of Alabama, he was completely unaware of this publication.

The Court **FINDS** that as Secretary of State and Attorney General, Siegelman took the position that unnotarized or unwitnessed absentee ballots should not be counted. The Court further **FINDS** that he communicated this information by way of Dr. Mountjoy's Handbook, the memorandum dated August 12, 1980, and by the three editions of the Alabama Election Handbook.

### 4. Billy Joe Camp
#### a. Secretary of State 1991–1993

Billy Joe Camp's testimony was introduced through deposition. Mr. Camp testified that the position his office maintained was the same as that testified to by Lieutenant Governor Siegelman. However, Mr. Camp could cite no instructions to any voting official that ballots not properly witnessed or notarized should be counted. The Court **FINDS** that

even if Billy Joe Camp took the position he claims to have taken as Secretary of State, such position was not communicated to the average voter or to county voting officials. The Court **FINDS** that voting officials were guided by the written instructions distributed by the Office of Secretary of State Camp and not by his subsequent testimony concerning unwitnessed, unnotarized ballots.

5. **Glenn Browder** (Secretary of State 1988–1989)

   **Perry Hand** (Secretary of State 1989–1991)

No evidence was introduced to indicate that Mr. Browder or Mr. Hand held positions inconsistent with that of Mr. Bennett. The only evidence introduced with respect to either of these Secretaries were the Alabama Voter Information Guides (Defendant Hellums's Exh. 48, 49). Both Guides state in pertinent part: "sign your name or make your mark (which must be witnessed) on the absentee ballot application." The Court **FINDS** that Secretaries Browder and Hand took positions consistent with the position of Secretary of State Bennett.

6. **Jimmy Evans** (Attorney General 1992–1994)

No evidence was introduced concerning the position taken by General Evans and the Court makes no finding with regard to such.

7. **Further Evidence of Officials' Positions**

The deposition testimony of Judge Robert Gentry provided further evidence of the consistent position taken by the Secretary of State's Office. Judge Gentry was the Probate Judge for Jackson County for thirty-six years. He did not run for reelection in November of 1994 because he turned seventy and was ineligible. (Gentry Depo. p. 8). Judge Gentry testified that he received the Election Handbook from the Secretary of State almost every year. (*Id.* at p. 9). Judge Gentry testified that he relied on the Handbook because it was the only information he had and that the Handbook instructed election officials not to count unwitnessed or unnotarized ballots. (*Id.* at 9–10).

8. **Information Communicated to Voters**

The only source of information regarding the position of the Attorney General of Alabama or the Secretary of State of Alabama that went directly to voters was the Voter Guides published and distributed by the Secretary of State's office. Brenda Carr, the Director of Public Information for Secretary of State from 1991 to present, testified at trial. Ms. Carr provided a memorandum to Kenneth Dowdy, dated May 10, 1995, that describes the distribution of the Voter Guide (Plaintiffs' Exhibit 50). Glen Browder began the practice of distributing the Guide throughout the state to any group requesting the Guide. Mr. Browder, Mr. Camp, and Secretary Bennett had 150,000 copies printed. Mr. Hand printed 225,000 copies. The Court referred to the information contained in the Guides distributed under the Browder and Hand offices. *See supra* p. 35. The Guide distributed under Billy Joe Camp states in pertinent part:

sign the affidavit and have the signature witnessed by either a notary public or two witnesses 18 years of age or older.

(Plaintiffs' Exh. 58). The Guide distributed under Secretary Bennett states in pertinent part:

sign the affidavit and have the signature witnessed by either a notary public or two witnesses 18 years of age or older.

(Plaintiffs' Exh. 60).

The Court **FINDS** that the Attorney General of Alabama and the Secretary of State of Alabama have taken consistent positions since 1980 regarding whether ballots such as the contested absentee ballots are to be counted. The consistent position is that such ballots **ARE NOT** to be counted. Such position was communicated to the voting officials by the Attorney General's opinion of 1980, the memorandum of Don Siegelman and Charles Graddick of 1980, the State of Alabama Election Officials' Handbook, and the several editions of the Alabama Election Handbook. Such position was communicated to the average voter through the Alabama Voter's Guide beginning in 1988.

**D. WRITTEN ABSENTEE BALLOT INSTRUCTIONS**

9. Whether the 1994 written absentee ballot instructions to voters stated that

ballots lacking proper notarization and the signatures of two adult witnesses would not be counted, the precise words used in such written instructions, and whether a reasonable voter could have understood the written instructions to be aspirational rather than mandatory.

*Roe,* 52 F.3d at 302.

A voter in Alabama who is permitted to vote by absentee ballot receives an absentee ballot package through the mail or by hand delivery if the voter comes to the Circuit Clerk's office to pick up the package. Three printing companies prepare three different absentee packages. Vicki Balogh, elections analyst for the Secretary of State's Office, testified that Computer Link Printing Company prepares the packages for a few counties (Plaintiffs' Exh. 62A), Roberts and Son Printing Company prepares the packages for approximately fifty-five counties (Plaintiffs' Exh. 62B), and Brown Printing Company prepares the packages for a few counties (Plaintiffs' Exh. 62C).

### 1. The Affidavit

The primary source for the requirements of an absentee ballot signature come from the affidavit envelope itself. Each envelope, regardless of which printing company prepared it, states "Note: Your signature must be witnessed by either: A notary public or other officer authorized to acknowledge oaths or two witnesses 18 years of age or older." This language comes from the affidavit included in Ala.Code § 17–10–7.

### 2. Additional Instructions

In addition to the clear language on the affidavit, the package prepared by Computer Link (Plaintiffs Exh. 62A) contains a separate instruction sheet that states: "Remember, you must have your signature either notarized or witnessed by 2 persons." The package prepared by Brown (Plaintiffs' 62C) contains an instruction sheet that states: "Your signature must be notarized, OR you must have two persons witness and sign the bottom of the envelope. If witnessed by two people, their addresses must be listed following their signatures."

### 3. Aspirational Rather Than Mandatory

The Court **FINDS** that a reasonable voter **COULD NOT HAVE** understood the instructions to be "aspirational rather than mandatory." The word "must" clearly indicates that a ballot is improper unless it is witnessed or notarized. No party introduced any evidence indicating that any voting official, whether Secretary of State or local, had even intimated that the instruction was aspirational. "Must" is a mandatory word and the average voter would have understood it to be mandatory.

## II. CONCLUSIONS OF LAW

### A. PLAINTIFFS' CLAIMS

"The due process clause protects the right of these voters to have their votes counted." *Curry v. Baker,* 802 F.2d 1302, 1317 (11th Cir.1986), *cert. dismissed,* 479 U.S. 1023, 107 S.Ct. 1262, 93 L.Ed.2d 819 (1986) (citing *U.S. v. Mosley,* 238 U.S. 383, 386–87, 35 S.Ct. 904, 905–06, 59 L.Ed. 1355 (1915); *Gray v. Sanders,* 372 U.S. 368, 380, 83 S.Ct. 801, 808–09, 9 L.Ed.2d 821 (1963)). Plaintiff Larry Roe, on behalf of himself and the class of voters he represents, claims that the State of Alabama has violated his due process and equal protection rights as protected by the Fourteenth Amendment of the United States Constitution.

> The right to vote remains, at bottom, a federally protected right. If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order. Such a situation must go well beyond the ordinary dispute over the counting and marking of ballots; and the question of the availability of a fully adequate state corrective process is germane. But there is precedent for federal relief where broad-gauged unfairness permeates an election, even if derived from apparently neutral action.

*Griffin v. Burns,* 570 F.2d 1065, 1077 (1st Cir.1978), citing *Brinkerhoff–Faris Co. v. Hill,* 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930).

The question remains, therefore, whether the Constitution bars the Democratic Party from changing the rules after the

election has been held. We recognize that some consider the change adopted by the Party to be a laudable one and the direction of recent attempts at Democratic Party reform is quite plainly toward the principle of proportional representation and maximum participation of minority views. But the process by which that result is reached is necessarily as important as the result itself. We cannot be blind to the fundamental deficiencies in the fairness of the process of reaching that result. Nor can we overlook the injuries to which those deficiencies gave rise.

*Brown v. O'Brien,* 469 F.2d 563, 569 (D.C.Cir.1972) (predetermining plaintiff's equal protection claims), *vacated as moot,* 409 U.S. 816, 93 S.Ct. 67, 34 L.Ed.2d 72 (1972).

■ The evidence presented in this case shows that the rules for counting absentee ballots have been consistently applied by every county, except one, in the State of Alabama. The practice of the State of Alabama with regard to absentee ballots contained in affidavit envelopes signed by the voter, but without proper notarization or proper witnessing by two adult witnesses, since at least 1980, has been to exclude the ballot from the vote count.[10] The consistent and plain position of the Secretary of State, the chief election official of the State of Alabama, is that an absentee ballot must include the signature of the voter and that signature must be notarized or witnessed by two adult witnesses. The Secretary of State has instructed every voting official in Alabama to that effect and has provided voters with the same information. The rule is a "bright-line" rule. Not one election official told this Court that a ballot such as the contested absentee ballots would receive treatment other than to reject the ballot.

Secretary of State Bennett testified that the rule of Alabama with regard to ballots such as the contested absentee ballots changed with the order of Judge Reese.

That Order came after the November 8, 1994 election, but it applied retroactively. Such a change is a "fundamental deficiency in the fairness of the process." The change in election practice and interpretation of the law of the State of Alabama is "broad-gauged unfairness [that] permeates an election." The post-election change of practice is abominable under the Constitution of the United States. It amounts to ballot-box stuffing. If voters were aware that the notarization and witness requirement for absentee ballots did not apply, perhaps many more would have voted. However, no one was advised that the requirement was a paper wall. Even the average voter in Washington County was unaware that the requirement was "aspirational." There is no evidence that Washington County voters were ever instructed that their votes might be counted even if they failed to have their signature properly notarized or witnessed.

■ The change in the rules has resulted in extreme harm to the citizens of the State of Alabama and to Perry O. Hooper. The voters of Alabama chose Perry Hooper to serve as their next Chief Justice of the Supreme Court. However, through the efforts of those persons who wished to change the results of that election several days after the election had taken place, the voters have been denied their rightfully elected Chief Justice for almost one year. Those who voted for him, as well as Mr. Hooper, have been denied his services and the emoluments that accompany the position. When such harm is wrought by a offense against the United States Constitution it is incumbent upon a federal court to step in to protect the rights guaranteed to each citizen of this nation. This Court will not shirk its duty.

## B. DEFENDANT HELLUMS'S CLASS CLAIMS

■ Defendant Hellums Class has asserted cross claims against the State of Alabama.

10. The Court does not mean that some such ballots have not slipped through and been counted. The absentee ballot-checking process is performed by humans and is, therefore, subject to human error. However, the consistent practice has been to exclude such ballots from the vote count. If any ballots such as the contested absentee ballots were accidentally or fraudulently included within some vote counts, then those votes would be subject to challenge through the state election contest process. This Court is concerned only with the "practice."

Defendant claims if the State of Alabama refuses to count his votes and those who cast votes that are like his (*i.e.*, contested absentee ballots), then Alabama will violate his due process and equal protection rights. The Court has held that Alabama has consistently refused to count votes such as the contested absentee ballots. A basic requirement to both due process and equal protection claims is a denial of some right. The Court **HOLDS** that Defendant Hellums had no right to have his vote counted. Therefore, the Court **HOLDS** that Defendant Hellums has failed to show a violation of his due process or equal protection rights. The Court **FINDS** for the State of Alabama on the Defendant Hellums Class cross claims.

## III. REMEDY

■ Having found that Plaintiffs' constitutional rights have been violated, this Court must exercise its equitable powers to fashion a remedy for Plaintiffs. Plaintiffs anticipate further proceedings with regard to this action and ask that the Court extend its preliminary injunction. The Court **GRANTS** Plaintiffs' request and extends this Court's Preliminary Injunction to January 1, 2000 or to the point when all legal proceedings related to this action end, whichever comes first.

### A. PERMANENT INJUNCTION

Based upon the Findings and Conclusion of this Court, the Court enters the following permanent injunction.

1. Secretary of State Jim Bennett is **PERMANENTLY ENJOINED** from counting any of the contested absentee ballots cast on November 8, 1994.

2. The Court **ORDERS** Secretary Bennett to certify the election for Supreme Court Justice and for Treasurer by the end of business on **Tuesday, October 3, 1995.** Such certification shall be *nunc pro tunc* December 5, 1994.

3. The Court **ORDERS** the State of Alabama to swear in Perry O. Hooper as Chief Justice of the Alabama Supreme Court as soon after certification as practicable. Mr. Hooper shall be sworn in *nunc pro tunc* January 16, 1995. Mr. Hooper shall receive all of the emoluments and benefits, including all compensation, that accompany his office *nunc pro tunc* January 16, 1995.

4. The Court **ORDERS** the State of Alabama to swear in Lucille Baxley as Treasurer of the State of Alabama as soon after certification as practicable. Ms. Baxley shall be sworn in *nunc pro tunc* January 16, 1995. Ms. Baxley shall receive all of the emoluments and benefits, including all compensation, that accompany her office *nunc pro tunc* January 16, 1995.

■ Any orders issued by any Court of the State of Alabama that in any way conflict with the ruling of this Court are **null and void and of no effect.** The interpretation of the United States Constitution by a federal court is the supreme law of the land. *M'Culloch v. Maryland,* 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819).