This is the second time this Court has considered an appeal involving the appellant, Horace Parker.
Plaintiff-appellant, Horace Parker, after getting this Court to reverse his impeachment conviction, Parker v. State,333 So.2d 806 (Ala. 1976), sought to have the trial court declare that he was the lawful treasurer of Jefferson County; that United States Fidelity Guaranty Company be ordered to reinstate his bond; and that Jefferson County be ordered to pay his back pay and allowances from September 14, 1974 (date of his impeachment conviction), to date. He also asked for costs to be taxed against the defendants and that the court award him a reasonable attorney's fee. The circuit court denied him any relief. He appealed.
 ISSUES
1. Can Parker contest his right to office within an action for pay and allowances rather than by quo warranto?
2. Was the bond properly cancelled and can USFG be required to reinstate the bond?
3. Was there a "vacancy" in the office?
4. Is Parker entitled to any pay and allowances as treasurer of Jefferson County during the pendency of the appeal of his impeachment conviction or from the date of the reversal of that conviction?
5. Is Parker entitled to attorney's fees?
 STATEMENT OF THE FACTS
Horace Parker was elected to the office of treasurer of Jefferson County in the general election held November 7, 1972. He took office on January 15, 1973. He timely filed the statutorily required bond of $400,000 with the Jefferson County Commission. The bond commenced January 15, 1973, and was to terminate on January 15, 1977.
On September 14, 1974, following an impeachment trial by jury in the Circuit Court of the Tenth Judicial Circuit, Parker was removed from office as treasurer of Jefferson County. A copy of the judgment of the court was served upon the president of the Jefferson County Commission. Parker filed notice of appeal to this Court immediately following his conviction.
Parker was paid as treasurer through September 14, 1974, but has not received any further pay from Jefferson County since that time. *Page 1324 
On September 19, 1974, Mr. E.H. Gamble, the Comptroller of Jefferson County, wrote to USFG advising them to cancel the bond on "former County Treasurer Horace Parker, Bond No. 06-0170-39-73, effective at the close of business September 14, 1974." After receipt of the letter, USFG forwarded to Mr. Gamble its form of notice of cancellation, bearing the date of September 24, 1974, to be executed by Jefferson County.
By resolution of October 1, 1974, the County cancelled Horace Parker's bond with USFG, effective September 14, 1974, and authorized the execution of the cancellation. The notice of cancellation was executed for Jefferson County by W. Cooper Green, then president of the Jefferson County Commission, and was returned to USFG and received by it on October 15, 1974. Neither the County nor USFG served a copy of the notice of cancellation on Horace Parker.
Pursuant to the notice from the County, USFG cancelled Parker's bond as of September 14, 1974, and on October 16, 1974, refunded the balance of the premium in the amount of $4,634 to the Geralds Agency which had paid the original premium on the bond. Parker was notified orally by Bobby Timmons, the insurance broker who had arranged for the bond, that the bond had been cancelled. The balance of the insurance premium was not paid to Jefferson County until May 26, 1976.
By resolution of September 17, 1974, the Jefferson County Commission, citing as authority § 31, Tit. 12, Code of Alabama 1940, appointed Mrs. Geneva Phillips Moore as County Treasurer of Jefferson County, Alabama. Mrs. Moore's appointment was contingent upon the Personnel Director of Jefferson County approving a leave of absence for her from her civil service position of Assistant Treasurer of Jefferson County. The Personnel Director ultimately approved successive 120 day leaves of absence for Mrs. Moore. While serving in that position, Jefferson County paid to her an amount equal to that payable by law to the Treasurer of Jefferson County.
On September 17, 1974, a bond was issued in the amount of $400,000 covering Mrs. Moore as Treasurer of Jefferson County. The bond has been in effect since Mrs. Moore's appointment as a result of successive extensions. Jefferson County has caused the bond to extend to January 15, 1977.
On May 14, 1976, this court reversed the impeachment conviction of the Circuit Court. The State of Alabama's Application for Rehearing was overruled on July 2, 1976, and the certificate of judgment was issued by this Court on July 2, 1976.
Within a week following the reversal of the Circuit Court Judgment by the Supreme Court, Parker called Tom Gloor, a county commissioner, and advised him that he intended to return as treasurer of Jefferson County. After an oral request by his attorney to USFG to advise him of the reason that the bond was allegedly cancelled failed to get any response, on July 21, 1976, he, by and through his attorney, wrote USFG advising them that he considered the bond still to be in effect and asked that they take the necessary steps to reinstate the bond. No response was received from USFG.
On August 4, 1976, in a meeting between the Jefferson County Commissioners and Parker's attorney, his attorney orally demanded payment of the salary and allowances due him during the pendency of his appeal and to date. The Commissioners advised Parker's attorney that before Parker would be qualified to assume office, he would have to properly file an official bond in the amount of $400,000, as USFG had asserted that his former bond had been cancelled and that it was no longer liable as surety. By letter of August 12, 1976, Parker's attorney advised Commissioner Gloor of his intent to reassume the office of treasurer of Jefferson County and demanded payment of all salary and allowances due him during the pendency of his appeal.
On August 16, 1976, Parker's attorney delivered to the Jefferson County Commission a "Notice of Reassumption of Office." By letter of September 2, 1976, Jefferson *Page 1325 
County Commission President, Tom Gloor, notified Parker in writing that USFG had refused to reinstate or reissue his bond. The notice further stated that before Parker could reassume the office of Jefferson County Treasurer, he must file a legally acceptable bond in the amount of $400,000 by September 9, 1976.
Parker did not file an additional bond, and by letter of September 28, 1976, Commissioner Gloor certified to the Jefferson County Commission that the fact that Parker had not furnished the bond abrogated any rights which he might have had to the office of treasurer of Jefferson County. On September 28, 1976, the Jefferson County Commission, by a resolution, took notice of the previous appointment of Mrs. Moore as Treasurer of Jefferson County, acknowledged that her appointment was still in effect, and noted that in its opinion, Parker had vacated any right to the office which he might have had.
On June 8, 1965, there went into effect United States Fidelity and Guaranty Company, Public Employees Blanket Bond, Bond No. 10355-08-1442-65. Subsequent to that time, two riders have been added to the bond. The bond has been in full force and effect since June 8, 1965. The last rider to the bond changed the name of the insured from W.A. Morgan, Treasurer, Jefferson County, Alabama. That rider was effective as of noon on January 20, 1973.
It has been stipulated by the parties that Parker has been within the week following the reversal of his conviction by this court, ready, willing and able to perform the duties of and to serve as the treasurer of Jefferson County, Alabama.
 I
Was declaratory judgment and not quo warranto the appropriate vehicle for Parker to use in asserting his right to the office? Under the facts here, we think so. As we shall develop later, there was never a legal vacancy in the office of treasurer under the facts of this case. Most of the facts were stipulated. As we construe the pleadings, the controversy is between the County and Parker not Moore and Parker. Parker claims the County Commission has acted illegally. Controversies touching the legality of acts of public officials, or public agencies, challenged by parties whose interests are adversely affected, is one of the favored fields for a declaratory judgment. Scott v. Alabama State Bridge Corporation, 233 Ala. 12,169 So. 273 (1936). Furthermore, Title 7, § 167, Code, provides:
 "This article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respects to rights, status, and other legal relations; and is to be liberally construed and administered. This article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees. The remedy provided for by this article shall not be construed by any court as an unusual or extraordinary one but shall be construed to be an alternative or cumulative remedy."
Parker, having shown a justiciable controversy between him and the County, was entitled to a declaration of rights.
 II
The next question is whether the bond was properly cancelled. We hold that it was not. The surety, USFG, did not follow the statutory requirements for discharge. Title 41, § 97, Code, provides:
 "Any person or corporation who is surety upon the official bond of any county officer or employee, by whomsoever approved, may discharge himself or itself of such suretyship upon making sworn application in writing addressed to the official, court, board or commission required to approve such bonds, setting forth such facts. Upon the filing of such application said official, court, board or commission to whom such application is addressed shall forthwith cause personal written notice to be served upon said *Page 1326 
principal fixing a day not less than fifteen nor more than thirty days after the date of the filing of such application requiring such principal to appear before him or it on and at a certain date and place and give a new bond; and upon the failure of such principal to give such bond within the time specified in such notice, he vacates his office and the official, court, board or commission giving such notice must at once certify such vacation to the appointing power who must fill the vacancy. If a new bond be filed the same must be in such amount and filed and approved as provided in this article. On the execution, approval and filing of such new bond such surety will stand discharged from all liability for any breach of said bond occurring thereafter but said discharge shall not affect the previous liability of any of the obligors, and in case of the discharge of any one or more obligors under this article, the same shall operate as a discharge of all other obligors on said bond. When the sureties on either bond have made any payments thereon on account of the principal obligor therein, they are entitled to the same remedies and recoveries against the sureties in the remaining bonds as was provided by section 67 of this title. Every such new or additional bond approved and filed as in this article provided is binding upon the obligors from the time of its approval and subjects them to the same liabilities, proceedings and remedy as are provided in relation to the first official bond of such officer or employee."
Where a statute provides a method whereby a surety may apply for a release from liability on an official bond, in order to procure a release the surety must comply strictly with the statute. Cf. Armstrong et al. v. Pugh, 19 Ala. 209 (1851), which holds that the liability of a surety on a county official's bond was not discharged until the statutory method of discharge was followed. Bolen v. National Surety Co.,108 S.C. 403, 94 S.E. 1049 (1918); 67 C.J.S. Officers, § 165f., p. 470.
 III
Was there a vacancy in the office of treasurer: We hold there was not.
Appeals from judgments of conviction in an impeachment trial are preferred cases (Title 41, § 195, Code), it is unquestionably the law that no vacancy in an office is created until conviction becomes final. If an appeal is not timely filed, or if the judgment of conviction is affirmed on appeal, there is a vacancy. Otherwise, there is not. Title 41, § 198, Code, provides:
 "It shall be the duty of the clerk of the supreme court, in all cases, when final judgment of conviction is rendered in that court, on appeal or otherwise, forthwith to certify the vacancy thus created to the appointing power, with a copy of the judgment; and, in like manner, the clerk of the circuit court or person designated to act as clerk, shall certify to the appointing power any final judgment of conviction rendered in such court, from which no appeal is taken."
While there was no "vacancy" in the office by reason of Parker's conviction, nevertheless he was legally suspended, by operation of law, from holding the office during the pendency of his appeal. Therefore, he had no right to the office or to any of the emoluments of it during that period. After his conviction was reversed, however, he was entitled to the office and to all the emoluments thereof. His official bond was not cancelled in accordance with law; therefore, he was under no legal obligation, at that time, to post a new bond. The County's requirement that he post a new bond was without authority of law, under the facts of this case.
 IV
Parker asked the trial court to declare that he was entitled to pay and allowances from the date of his conviction until the end of his term. We hold he was not entitled to any pay and allowances while he was suspended, that is, while his conviction was on appeal, but he was entitled to all pay and allowances from the date this Court's certificate of judgment was issued until the end of his term. *Page 1327 
The County relies upon Walden v. Town of Headland, 156 Ala. 562,47 So. 79 (1908), and Irwin v. Jefferson County, 228 Ala. 609,154 So. 589 (1934), to support its theory that since it paid Mrs. Moore as a "de facto" officer during the entire period, it is not liable to Parker. Both cases do hold, underthe facts of those cases, that payment of the salary of a de facto incumbent discharging the duties of the office exonerates the governmental body from payment of the salary of the de jure officer. Insofar as the amounts paid to Mrs. Moore during the pendency of Parker's appeal, the rule of Walden and Irwin are applicable. The County had apparent authority to appoint someone to act while Parker was suspended. However, after Parker's conviction was set aside, the County knew that he was claiming the office. In Irwin v. Jefferson County, supra, this Court inferred that the majority rule was applicable only where the governmental body acted in good faith. We do not mean to say that the County acted with ill will as a bad motive, only that "bad faith," from a legal standpoint, is inferable from the fact that from the date Parker's conviction was set aside, he became legally entitled to the office, and any payment of a salary to another would be at the peril of the County. In this respect, this case is similar to that of Mitchell v. Greenough,295 Ala. 165, 325 So.2d 158 (1976). There, the personnel board brought an action for declaratory judgment asking that the Court declare that a city employee was entitled to back pay for the period of time when he was placed on leave of absence without pay because of indictments against him, where he was subsequently acquitted of all charges and reinstated. Construing a personnel board rule, this Court held the employee was entitled to back pay.
While Alabama has no statute which specifically provides that an official whose impeachment has been set aside is entitled to pay from the time his conviction is overturned, we think that Alabama procedure envisions that under situations such as we have here, an office holder, whose title to the office has been upheld, is entitled to recover his pay during the time when he was deprived of the office, especially when, as here, the paying authority is the agency responsible for his not assuming his office after his conviction was reversed.
 V
Is Parker entitled to his attorney fees? We hold that he is not. In the absence of a contract, statute, or recognized ground of equity, there is no inherent right to have attorney fees paid by the opposing side. White v. State, 294 Ala. 502,319 So.2d 247 (1975).
AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and FAULKNER, SHORES and BEATTY, JJ., concur.