[1] The two persons named as appellees no longer hold the public offices indicated in this style. Their successors have been "automatically substituted" as parties. See Rule 43(b), Ala. R. App. P.
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 934 
E.C. "Sonny" Hornsby, former Chief Justice of the Alabama Supreme Court, appeals the dismissal of an action in which he had sought a judgment declaring that he was holding the office of Chief Justice in a de jure capacity during the period following the expiration of his elective term, while no successor had been elected and qualified, and that during that period he had all the powers, rights, functions, duties, obligations, and benefits attendant upon the office of Chief Justice. The Montgomery Circuit Court dismissed Hornsby's declaratory judgment action as moot, on motion of the defendants, Jimmy H. Baker, who was then acting director of the Department of Finance of the State of Alabama, and Jeff Sessions, who was then attorney general of the State of Alabama. Before the action was dismissed, the parties had agreed that the sole issue in the case was whether Hornsby hadde jure been Chief Justice of the Alabama Supreme Court for the period beginning at the end of his elective term and running through October 20, 1995. We hold that Hornsby was holding the office of Chief Justice in a de jure capacity during that period; we reverse the judgment of the trial court and render a judgment for Hornsby.
In 1988, Sonny Hornsby was elected to the office of Chief Justice of the Alabama Supreme Court. He assumed the duties of that office in January 1989. Chief Justice Hornsby sought re-election to that office in the November 1994 general election. His opponent in that race was Perry O. Hooper, Sr. As of February 1995, when this declaratory judgment action was filed, no winner had been certified in the race for the position of Chief Justice. In the interim between the election and the filing of this declaratory judgment action, actions had been filed in state and federal courts regarding the validity of certain absentee ballots cast in the November 1994 general election. In one of those actions, Roe v. Alabama, CV-94-0885, the United States District Court for the Southern District of Alabama on December 5, 1994, enjoined the counting of contested absentee ballots. An appeal to the United States Court of Appeals for the Eleventh Circuit followed. Perry O. Hooper, Sr., was a named plaintiff in the Roe action. Sonny Hornsby was not a named defendant.
By letter of January 16, 1995, Baker, as acting director of finance, requested an opinion from the attorney general as to whether the state comptroller could legally issue state warrants to pay the salaries or expenses of Chief Justice Hornsby and state treasurer George C. Wallace, Jr., after January 16, 1995, and until the winners of the races for the offices of Chief Justice and state treasurer had been officially certified and installed in office. The winner of the 1994 election to the office of state treasurer had not been certified at the time the acting director of finance requested the attorney general's opinion. On February 1, 1995, Attorney General Sessions issued an opinion, stating that the terms of the offices of the Chief Justice and the treasurer had expired and, thus, that the state comptroller could not legally issue state warrants to pay the salary or expenses of Hornsby or Wallace.
On February 2, 1995, Hornsby filed his declaratory judgment action in the Circuit court of Montgomery County. He sought a judgment declaring that by virtue of §§ 12-2-1, 17-2-6, and36-3-2, Ala. Code 1975, his term of office continued until his successor was "elected and qualified" or until he was declared the winner of the November 1994 election for Chief Justice, and declaring that during that period he had all the powers, rights, functions, duties, obligations, and benefits attendant upon the office of Chief Justice of the Supreme Court of Alabama; and *Page 936 
he further asked that the circuit court issue an injunction permanently enjoining Sessions and Baker from interfering or attempting to interfere with his performance of the duties of the office of Chief Justice and from attempting to withhold from him the attendant benefits of that office.
On March 9, 1995, Hornsby moved for a summary judgment. On that same day, the parties jointly stipulated that there were no material facts in dispute in this cause; that Hornsby had previously been duly elected and qualified as Chief Justice of the Supreme Court of Alabama, having taken the oath of office on January 17, 1989; that in the general election of November 8, 1994, Hornsby had sought reelection and had been opposed in that election by Perry O. Hooper, Sr.; that although the election took place on November 8, 1994, no winner of the race for Chief Justice had been determined; that there was then pending other litigation relating to the counting of certain absentee ballots in the November 1994 election; that the result of the election for the office of Chief Justice had not been certified; that no election contest had been filed; that no one had qualified for the office of Chief Justice; and that no one could predict with certainty when the other litigation would be resolved or when the result of the election would be certified. Based on the stipulated facts, the parties agreed that the questions presented by the case "are . . . purely questions of law and may be decided by this court pursuant to Rule 12(c), Alabama Rules of Civil Procedure, or Rule 56, Alabama Rules of Civil Procedure."
On April 21, 1995, Sessions and Baker moved for recusal of the trial judge assigned to the case, Circuit Judge Eugene Reese, because of an order Judge Reese had issued in a separate case, Odom v. Bennett, CV-94-2434. In Odom v. Bennett, certain absentee voters had sought an order requiring Secretary of State Jim Bennett to count their ballots cast in the November 1994 election. Judge Reese issued an order in Odom v.Bennett requiring that the ballots be counted if they met a standard adopted by prior Alabama caselaw. Sessions and Baker argued that the issuance of that order in Odom v. Bennett gave an appearance of impropriety in this case.
On May 1, 1995, the trial court entered a consent order stating that during the course of a hearing the defendants had acknowledged that, pursuant to § 36-1-2 et seq., Chief Justice Hornsby's actions taken in performance of the duties of the office of Chief Justice, since the expiration of the elective term that had begun in 1989, were lawful actions and, therefore, that his actions and decisions were binding and valid: "[T]his Court ORDERS, ADJUDGES AND DECREES that the Honorable Sonny Hornsby is performing the duties and functions of the Office of Chief Justice of the Supreme Court of Alabama, and that all acts performed by him in that capacity are at a minimum valid and binding acts." All remaining issues were taken under advisement for disposition by further order of the court.
On May 26, 1995, Sessions and Baker filed a memorandum in opposition to Hornsby's motion for summary judgment.
On September 18, 1995, Hornsby filed a second motion for summary judgment. On October 24, 1995, Sessions and Baker filed a motion to dismiss, citing in support thereof an order of the United States District Court for the Southern District of Alabama, issued September 29, 1995, in the case of Roe v.Alabama; that order in Roe permanently enjoined the State of Alabama from counting any of the contested absentee ballots; ordered Secretary of State Bennett to certify (nunc pro tunc
December 5, 1994) the election of Perry O. Hooper, Sr., as Chief Justice of the Supreme Court of Alabama; ordered the State of Alabama to swear in Hooper "as soon after certification as practicable"; and ordered that Hooper "receive all of the emoluments and benefits, including all compensation, that accompany his office nunc pro tunc January 16, 1995." The district court also ruled: "Any orders issued by any Court of the State of Alabama that in any way conflict with the ruling of this Court are null and void and of no effect." Roe v.Alabama, 904 F. Supp. 1315, 1336 (S.D.Ala.), aff'd, 68 F.3d 404
(11th Cir. 1995). On October 20, 1995, Hooper was certified as the winner of the election for Chief Justice and on that same *Page 937 
day was sworn in as Chief Justice. Thus, asserted Sessions and Baker in their motion to dismiss, the question whether Hornsby had served as a de jure officer after the expiration of his elective term was moot.
On November 2, 1995, Judge Reese entered an order denying the motion to recuse and dismissing the case as moot. Hornsby appealed.
Hornsby makes two arguments on appeal: (1) that the trial court erred to reversal in dismissing the action as moot and (2) that the trial court erred in not granting his motion for summary judgment. In support of his argument that the trial court erred in dismissing the action as moot, Hornsby contends that not all of the issues raised in his complaint in this action were resolved by the final judgment inRoe. Hornsby contends that the action of the trial court in delaying a ruling on the summary judgment motion by six months cannot change the fact that under the facts and the law at the time of submission the motion was due to be granted. Hornsby asks that this Court, based on the law and the facts of the case, enter an order granting his motion for summary judgment. The defendants contend that because Hornsby did not respond to their motion to dismiss, he acquiesced in the dismissal. They argue that this Court may not consider Hornsby's argument that his declaratory judgment action was not rendered moot by the order in Roe because, they say, he is raising that argument for the first time on appeal. They also argue that Hornsby is bound by the Roe judgment. Alternatively, the defendants argue that the case should be remanded for the trial court to consider the motion to recuse and Hornsby's motion for summary judgment.
We first address the defendants' contention that Hornsby did not object to the motion to dismiss and, therefore, that the trial court did not err dismissing the case. An appellate court will not review questions not decided by the trial court. McWhorter v. Clark, 342 So.2d 903 (Ala. 1977). " 'Courts of last resort are without authority to put the lower court in error, in the absence of some ruling of such court showing or containing error." ' Defore v. Bourjois, Inc., 268 Ala. 228,230, 105 So.2d 846, 848 (1958), quoting Warren v. State,18 Ala. App. 245, 90 So. 277 (1921).
The trial court had been advised of each party's position regarding the question whether the ruling in the Roe case would render this declaratory judgment action moot. In a letter of August 7, 1995, to the trial judge, Hornsby's counsel contended that none of the legal issues raised in this litigation would be mooted by the action of the federal courts in the absentee-ballot litigation, regardless of who the federal courts eventually found to have won the election. Thereafter, the defendants moved for a dismissal on the ground that the rulings of the federal courts in Roe rendered this case moot. Their motion to dismiss asserted, in part, "The sole question before this Court . . . has been adjudicated and preempted by the judgment of the Roe court, which has ruled that Perry Hooper is the Chief Justice of Alabama as of January 16, 1995." We must reject the defendants' argument because Hornsby did address in the trial court the issue whether an adverse ruling by the federal court would impact his declaratory judgment action, albeit prior to the filing of the motion to dismiss.
At the outset, it is necessary to determine the standard of review applicable in this case. Hornsby's action was initiated as a declaratory judgment action; as such, it is subject to the conventional rules of procedure. Campbell v.Shell, 289 Ala. 115, 266 So.2d 272 (1972); Rule 57, Ala. R. Civ. P. "[T]he lack of a justiciable controversy may be raised either by a motion to dismiss, Rule 12, [Ala. R. Civ. P.], or a motion for summary judgment." Smith v. Alabama Dry Dock Shipbuilding Co., 293 Ala. 644, 649, 309 So.2d 424, 427 (1975). Before it entered the dismissal, the trial court had taken under advisement Hornsby's first motion for summary judgment and Hornsby had filed a second motion for summary judgment. When matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment, Rule 12(b), Ala. R. Civ. P.; this is the case regardless of what the motion has been called or how it was treated by the trial *Page 938 
court, Papastefan v. B L Constr. Co., 356 So.2d 158
(Ala. 1978); Thorne v. Odom, 349 So.2d 1126 (Ala. 1977). "Once matters outside the pleadings are considered, the requirements of Rule 56, A.R. Civ. P., become operable and the 'moving party's burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law.' C. Wright 
A. Miller, Federal Practice Procedure, Civil, § 1366 at 681 (1969)." Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala. 1986). The effect of converting the defendants' motion to dismiss into a motion for summary judgment was to impose upon the defendants the burden of meeting the two-part summary judgment standard, that is, the burden of showing that there is no genuine issue of material fact and that the defendants are entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; see,Houston v. McClure, 425 So.2d 1114 (Ala. 1983).
In reviewing a summary judgment, an appellate court looks at the same factors that the trial court considered in ruling on the motion. Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1976). Ruling on a summary judgment motion is a "nondiscretionary function of the trial court," and on appeal a summary judgment carries no presumption of correctness. Hightower Co. v.United States Fidelity Guaranty Co., 527 So.2d 698, 701
(Ala. 1988).
" 'The declaratory judgment statutes do not empower courts to decide moot questions [or] abstract propositions or to give advisory opinions, however convenient it might be to have the questions decided for the government of future cases.' " Wallace v. Burleson, 361 So.2d 554, 555 (Ala. 1978),quoting State ex rel. Baxley v. Johnson, 293 Ala. 69,300 So.2d 106 (1974). See, also, Graddick v. McPhillips, 448 So.2d 333,336 (Ala. 1984). In deciding whether a case is moot, a court must consider "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." 13A C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3533, at 212 (1984). "[I]f a case has become moot, or [if a] judgment would not accomplish an end recognized as sufficient in law, there is no necessity for the judgment, the court will decline to consider the merits, and [the court will] dismiss the case."Chisolm v. Crook, 272 Ala. 192, 194, 130 So.2d 191 (1961).
In this case, there was no genuine issue as to any material fact. On March 9, 1995, the parties entered into a joint stipulation stating that there were no material facts in dispute. Thereafter, the order was issued in the Roe case. The initial question we must decide is whether the Roe order made moot the declaratory judgment action. This is a question of law.
The question before the trial court at the time the motion to dismiss was filed was whether Hornsby's tenure as Chief Justice had continued beyond the expiration of his six-year elective term, on the basis that no successor had been determined. That question remains: Did Hornsby's tenure as Chief Justice continue beyond his six-year term, where no successor had been determined before the end of that term or during the time between the end of that term, and the date the Roe judgment was entered by the federal court? We conclude that that question is not moot. A judgment in this case will accomplish an end recognized as sufficient in law; thus, there is a necessity for a judgment. See, Chisolm v. Crook, supra.
Thus, with regard to the first issue raised by Hornsby, whether the trial court erred in dismissing the action as moot, we conclude that the trial court did so err.
We now look to the second issue raised by Hornsby, whether the trial court erred in not granting his motion for summary judgment. Our review of that issue is de novo. Hightower Co.v. United States Fidelity Guaranty Co., supra. Because the facts are not in dispute, this is a question of law.
Hornsby says there would have been three possible resolutions of his request for a determination of the nature of his service as Chief Justice during the time beginning at the end of his elective term and running until his successor took office: (1) a holding that he served in a de jure
capacity, (2) a holding that he served in a de facto capacity, or (3) a *Page 939 
holding that he was unlawfully in office. Hornsby contends that he served in a de jure capacity, pursuant to Amend. No. 328, Ala. Const. 1901, and §§ 12-2-1, 17-2-6, and 36-3-2, Ala. Code 1975. Specifically, Hornsby argues that the office of Chief Justice is created and mandated by § 6.02(a), Amend. No. 328, and he says that this office is the only judicial position created by the Constitution in a self-executing manner. Because the Constitution is silent, however, as to what happens if no one is elected to serve at the expiration of the term of the Chief Justice, Hornsby argues that it is the obligation of the legislature to implement the constitutional mandate and that the legislature has done so in §§ 12-2-1, 17-2-6, and 36-3-2, Ala. Code 1975. Each of these statutes provides that the Chief Justice and the Associate Justices shall hold their offices for a term of six years "and until their successors are elected and qualified." Hornsby argues that even though the federal court in Roe held that Perry Hooper, Sr., was entitled to the office of Chief Justice of the Alabama Supreme Court nunc pro tunc
January 16, 1995, that decision does not invalidate the law of Alabama, under which, Hornsby says, he was the de jure Chief Justice until Hooper took the oath of office on October 20, 1995. Hornsby says that there sometimes arise situations in which two people receive pay for the same position for the same time, citing Parker v. Jefferson County Comm'n, 347 So.2d 1321
(Ala. 1977).
The defendants contend that § 6.15 of Amend. No. 328, providing that "[t]he term of office of each judge of a court of the judicial system of this state shall be six years," is more restrictive than the former constitutional article governing terms of judges, and is to be strictly construed. Because § 6.15 does not include the holdover language provided in the former constitutional article, Art. VI, § 155, Ala. Const. 1901, the defendants argue that the Chief Justice serves a term of six years, no more and no less. The defendants also take the position that even if it is determined that § 6.15 is not self-executing because it does not provide when the terms of office begin and end, and that §§ 12-2-1 and 36-3-2
constituted the enabling legislation, the plain language of § 6.15 shows that the framers intended for the term of the Chief Justice to expire after six years. In the alternative, the defendants argue that if it is determined that "enabling legislation" provides for the holdover of the Chief Justice, it is well established that the holdover period may not be for an indefinite period of time.
As a general proposition, constitutional provisions are given mandatory effect. Singer, 3 Sutherland StatutoryConstruction, § 57.13, p. 35 (1992). "Whenever a constitutional provision is plain and unambiguous, when no two meanings can be placed on the words employed, it is mandatory, and courts are bound to obey it." State ex rel. Robertson v. McGough, 118 Ala. 159,166, 24 So. 395, 397 (1898). "A constitutional provision, as far as possible, should be construed as a whole and in the light of [the] entire instrument and to harmonize with other provisions, [so] that every expression in such a solemn pronouncement of the people is given the important meaning that was intended in such context and such part thereof." StateDocks Commission v. State ex rel. Cummings, 227 Ala. 414, 417,150 So. 345, 346 (1933).
Amendment No. 328, Ala. Const. 1901, governs the judicial system in this state. Amendment No. 328 repealed the original Article VI of the Constitution and created the Unified Judicial System. Section 6.01 of Amend. No. 328 vests the judicial power of the state in a unified judicial system, which "shall consist of a supreme court" and other courts. Section 6.02(a) provides that "[t]he supreme courtshall be the highest court of the state and shall consist of one chief justice and such number of associate justices as may be prescribed by law." (Emphasis added.) In searching for the proper construction of a constitutional provision, we must look to the language of that provision. The word "shall" is considered presumptively mandatory unless something in the character of the provision being construed requires that it be considered differently. Singer, 3 Sutherland StatutoryConstruction, § 57.02, p. 4 (1992). Reading § 6.02(a) strictly, and *Page 940 
in the light of the entire instrument,[3] we conclude that the language of that section is mandatory. The constitution requires that the supreme court shall consist of a chief justice and associate justices.
Another constitutional provision at issue in this case, § 6.15, provides that the "term of office" for all judges "of the judicial system of this state," including the Chief Justice, "shall be six years." This provision is also mandatory, but not self-executing. It makes no provision for when the term of office begins and ends, and no provision for how the mandate that there be a Chief Justice is to be carried out in a case with facts such as the one before us now.
"[T]he function of constitutions is to establish the framework and general principles of government," and often the topics are couched in broad phrases. Summers v. State,244 Ala. 672, 673, 15 So.2d 502 (1943). "For this reason, a ' "Constitution is not to receive a technical construction, like a common-law instrument, or statute." ' " House v. CullmanCounty, 593 So.2d 69, 72 (Ala. 1992); citing and quoting earlier cases, including Dorman v. State, 34 Ala. 216, 235
(1859). When a constitutional mandate is not self-executing, it is for the legislature to implement the mandate. Brown Co. v.Seay, 86 Ala. 122, 5 So. 216 (1889). Section 6.21(h) of Amend. No. 328 specifies:
 "Except to the extent inconsistent with the provisions of this article, all provisions of law and rules of court in force on the effective date of this article shall continue in effect until superseded in the manner authorized by the Constitution."
Thus, we turn to statutory authority for guidance with regard to when judges' terms begin and end.
Section 12-2-1, Ala. Code 1975, provides, in pertinent part:
 "The Supreme Court, except as otherwise provided, shall consist of a chief justice and eight associate justices, who shall be elected by the qualified electors of the state at the general elections as provided by law . . . and who shall hold their offices for the term of six years from the first Monday after the second Tuesday in January next succeeding their election and until their successors are elected and qualified. . . ."
Section 17-2-6 provides, in pertinent part:
 "A chief justice and two associate justices of the Supreme Court shall be elected on the first Tuesday after the first Monday in November, 1976, and every six years thereafter; . . . . The justices of the Supreme Court shall hold office for a term of six years and until their successors are elected and qualified."
Section 36-3-2 provides, in pertinent part:
 "The chief justice of the supreme court and associate justices of said court, . . . when not otherwise provided for by law, shall hold their respective offices for the term of six years from the first Monday after the second Tuesday in January next after their election and until their successors are elected and qualified."
Sections 12-2-1, 17-2-6, and 36-3-2 are not inconsistent with § 6.15, Amend. No. 328. These statutes implement § 6.15, so as to provide for the number of Associate Justices on the Supreme Court and for the time when the terms of office of the Associate Justices and the Chief Justice begin and end. In fact, the recodification of Alabama law into the 1975 Code, including §§ 12-2-1, 17-2-6, and 36-3-2, confirms that the legislature intended to provide for the technical aspects not provided for in the constitutional provisions. Section 17-2-6 implements § 6.15 by setting an initial "start" date of the terms of the Justices:
 "A chief justice and two associate justices of the Supreme Court shall be elected on the first Tuesday after the first Monday in November, 1976, and every six years thereafter; three associate justices *Page 941 
shall be elected on the first Tuesday after the first Monday in November, 1978, and every six years thereafter, and three associate justices shall be elected on the first Tuesday after the first Monday in November, 1980, and every six years thereafter. The justices of the Supreme Court shall hold office for a term of six years and until their successors are elected and qualified."
(Emphasis added.)
The defendants argue that should the holdover provisions of these statutes become applicable, then the cases of CityCouncil of Montgomery v. Hughes, 65 Ala. 201 (1880), Prowell v.State ex rel. Hasty, 142 Ala. 80, 39 So. 164 (1905), Ham v.State ex rel. Blackmon, 162 Ala. 117, 49 So. 1032 (1909), andState ex rel. Benefield v. Cottle, 254 Ala. 520, 49 So.2d 224
(1950), limit the time of holdover, on the principle that prolonged terms by holdover are disfavored. The defendants claim that the result of the election for Chief Justice continued long undetermined because of what they call vexatious litigation on the part of Hornsby, which they say was a result of holding over discouraged by the Court in City Council ofMontgomery v. Hughes, supra; and the defendants say that to determine what would be a "reasonable" time for holding over the Court should look to § 17-15-50 and Amend. No. 57, Ala. Const. 1901, governing election contests, for applicable time periods. The defendants argue that because the Constitution and the Code contemplate that disputed results of statewide elections will be settled during the organizational session of the legislature, a reasonable time for the holdover would have expired in January 1995, upon the end of the organizational session. Further, the defendants argue that a Chief Justice is not an indispensable element of the judicial system, because an Associate Justice may perform the duties of the Chief Justice, under § 12-2-6, Ala. Code 1975.
Under the facts of this case, we find unpersuasive the defendants' argument. Section 12-2-6 applies only to instances where the Chief Justice is "disabled from actively performing his duties as chief justice or those ex officio duties imposed upon him by law," because of "disability or absence," not to instances where the election results cannot be certified and the successor in office, whether it be the incumbent or the incumbent's opponent, cannot be installed.
The Supreme Court of Alabama has stated "that the words 'until his successor is elected and qualified' [were] never intended to prolong the term of office beyond a reasonable time, after an election, to enable the newly elected officer to qualify." Prowell v. State ex rel. Hasty, 142 Ala. 80, 83,39 So. 164, 166. Indeed, as pointed out by the defendants, the Supreme Court has expressed concern that a different construction might tempt defeated candidates to use "vexatious litigation to prolong their official terms." City Council ofMontgomery v. Hughes, 65 Ala. 201, 207. However, the cases cited by the defendants for the proposition that Hornsby held over for an unreasonable period of time are distinguishable.City Council of Montgomery v. Hughes was an action upon a bond executed by a city clerk who claimed that the bond he executed at the beginning of a two-year term of office did not expire until his successor was elected and qualified, four years later. It was unclear from the pleadings whether Hughes was reelected after his first term, or whether no election was held and Hughes held over in office for another two years. In determining the liability of the sureties, the Court considered two things: (1) the time period expressly stated in the bond (2 years), and (2), assuming Hughes was not reelected, whether an elected official could indefinitely hold over at the end of his term. The Court stated:
 "This interval [between election and the qualification of an officer] may vary in length, under particular circumstances; but it was never within the legislative contemplation, that . . . an official term could be prolonged beyond a reasonable time for the newly elected officer to qualify. If for such time he failed to qualify, there would be a vacancy, to be filled as the charter directs."
65 Ala. at 207. Under the particular and distinctive facts of this case, there was no vacancy. In Prowell v. State ex rel.Hasty, Ham v. State ex rel. Blackmon, and State ex rel.Benefield v. Cottle, there were successors *Page 942 
ready and qualified to take office, either because they had been elected or because they had been appointed by the Governor to a vacancy in office. In the case before us, there was no successor to the office. Rather, a federal court had enjoined the counting of contested absentee ballots in this close race, thereby preventing the certification and installation of a successor.
Recently, in James v. Langford, 695 So.2d 1158 (Ala. 1997), the Supreme Court addressed a case with a situation analogous to that now before us. In that case, Governor James had attempted to oust two trustees of Auburn University who were holding over in office, and to seat two persons of his choosing. The Senate, however, would not confirm the trustees chosen by the Governor; confirmation by the Senate is required by Amend. No. 161, Ala. Const. 1901. One question addressed by the Court was whether the trustees were entitled to hold over pursuant to a constitutional provision with language similar to the language found in §§ 12-2-1, 17-2-6, and 36-3-2. The Court held that the language found in Amend. No. 161 — "shall hold office for a term of twelve years, and until their successors shall be appointed and qualified" — does permit a holding over until appointments of successors are made, and even though in the Langford case several years had passed, the Court stated that "the constitutionally allowed holdover period has not been terminated." 695 So.2d at 1160.
We conclude that, under the unique circumstances of this case, Hornsby's tenure as Chief Justice continued beyond his six-year term, under the provisions of §§ 12-2-1, 17-2-6, and36-3-2, and Amend. No. 328, Ala. Const. 1901, and that his continued tenure was, therefore, de jure. Under the facts of this case, there was no "newly elected officer," as there was in Prowell. There was no "vacancy," as existed in the public offices at issue in Ham and Cottle. The defendants agree that Hornsby's performance of the duties of the office of the Chief Justice was lawful and binding, pursuant to § 36-1-2, Ala. Code 1975. With regard to the defendants' argument that the results of the election continued to be undetermined because of vexatious litigation," we note that the litigation that was pending, Roe v. Alabama, in which the injunction was issued, was not initiated by Hornsby to prolong his term; thus, this case did not raise the concern expressed by the Court inHughes. The Roe litigation, which resulted in an order enjoining the secretary of state from certifying the results of the election of the Chief Justice, was initiated by Hooper and others. Moreover, Hornsby promptly sought a determination of his rights, duties, obligations, and status as Chief Justice of the Supreme Court, by filing a declaratory judgment action in the Circuit Court of Montgomery County. Thereafter, he sought a resolution of the controversy concerning whether he was lawfully holding office, by filing a motion for summary judgment on March 9, 1995.
The defendants argue that in the Roe case the federal district court resolved the sole issue in this case, that being the question who was the de jure Chief Justice in Alabama after Hornsby's elective term ended. The defendants state that a holding by this Court that Hornsby held the office of Chief Justice de jure after his elective term ended, would be contrary to the order of the federal district court and null and void under that court's order. "There are at least two distinct varieties of judgments nunc pro tunc: those to correct errors in a judgment already entered; and those to protect parties from the court's delay in entering judgment during which [delay] a party has died. Federal law recognizes both varieties of judgments nunc pro tunc." Middleton v. Dan River,Inc., 617 F. Supp. 1206, 1222 (M.D.Ala. 1985), aff'd in part,rev'd in part on other grounds, 834 F.2d 903 (11th Cir. 1987). The United States Supreme Court, in Mitchell v. Overman, 103 U.S. (13 Otto) 62, 64-65, 26 L.Ed. 369 (1880), stated:
 "[T]he rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, or of any other cause not *Page 943 
attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up. In such cases, upon the maxim actus curiae neminem gravabit, — which has been well said to be founded in right and good sense, and to afford a safe and certain guide for the administration of justice, — it is the duty of the court to see that the parties shall not suffer by the delay."
As pointed out by Justice William O. Douglas in his dissent in Parker v. Ellis, 362 U.S. 574, 598, 80 S.Ct. 909, 922-23,4 L.Ed.2d 963 (1960), "Any judgment nunc pro tunc indulges in a fiction. But it is a useful one, advancing the ends of justice."
In the Roe case, the federal court, in addition to determining that the secretary of state should be permanently enjoined from counting the contested absentee ballots cast in the November 8, 1994, election and determining that Hooper should be certified the winner and sworn in as Chief Justice, apparently decided that, in order to advance the ends of justice, Hooper should be sworn in nunc pro tunc January 16, 1995. That court also held that Hooper was entitled to "receive all of the emoluments and benefits, including all compensation, that accompany his office nunc pro tunc January 16, 1995." Roev. Mobile Appointing Board, supra, 904 F. Supp. 1315, 1336. Our holding that after the end of his elective term Sonny Hornsby served in the office of Chief Justice de jure in no way contravenes the order of the District Court of the Southern District of Alabama in Roe. There is precedent in Alabama law for paying two different people an amount payable at law as salary for a government position. In Parker v. Jefferson CountyComm'n, 347 So.2d 1321 (Ala. 1977), Horace Parker, a county treasurer, was impeached. After his impeachment, Parker was suspended from office and another person was appointed to the position of treasurer. The newly appointed treasurer, while serving in that position, was paid "an amount equal to that payable by law to the Treasurer of Jefferson County." 347 So.2d at 1324. On appeal, Parker's impeachment conviction was overturned by the Supreme Court. Thereafter, the Jefferson County commissioners did not allow Parker to assume office; he sued for a judgment declaring that he was the lawful treasurer and sought back pay and allowances for the time he was out of office because of the impeachment conviction. The Court held that Parker was entitled to pay and allowances for the period running from the date of the certificate of judgment reversing his impeachment conviction until the end of his term, but not for the period during which he was suspended pending appeal of the conviction. 347 So.2d at 1326-27.
We conclude, based on the peculiar facts of this case, that Sonny Hornsby served in a de jure capacity as Chief Justice of the Alabama Supreme Court from the time his elective term ended until Chief Justice Perry O. Hooper, Sr., was sworn into office as Chief Justice on October 20, 1995, and that during that period, he had all the powers, rights, functions, duties, obligations, and benefits attendant upon the office of the Chief Justice. Therefore, we reverse the judgment of the circuit court and hereby enter a judgment declaring that Sonny Hornsby is entitled to the benefits of the office of Chief Justice during that period of time.
REVERSED AND JUDGMENT RENDERED.
THOMAS N. YOUNGER, BILLY C. BURNEY, JEROME B. BAIRD, FRED C. FOLSOM, J. RICHMOND PEARSON, and WILLIAM H. BALDWIN, Special Justices, concur.
ROBERT E. L. KEY, Special Chief Justice, and ROBERT L. BYRD, Special Justice, dissent.
[3] Section 6.10 of Amend. No. 328, for instance, provides that "[t]he chief justice of the supreme court shall be the administrative head of the judicial system" and that the Chief Justice "shall appoint an administrative director of courts and other needed personnel to assist . . . with . . . administrative tasks." (Emphasis added.)