This Court granted Patricia Parish's petition for a writ of certiorari, consistent with Rule 39(a)(1)(c), Ala.R.App.P., because this case presents a material question of first impression. Christopher Connell had sued his estranged wife, Amy Connell, for a divorce on May 18, 1999. His complaint contained a complete and comprehensive property settlement that Mr. and Ms. Connell had negotiated. The trial court entered a divorce judgment, incorporating the parties' property settlement, the same day. By its terms, and consistent with § 30-2-8.1, Ala. Code 1975, this judgment stated: "Effective upon the expiration of thirty (30) days from the date of the filing of the Summons and Complaint in this cause, this decree shall become final." (C. 21-22.) Tragically, Christopher Connell committed suicide seven days later.
Amy Connell then moved, under Rules 59(e) and 60(b)(4), Ala.R. Civ. P., for relief from the divorce order, seeking to abate the divorce action. Patricia Parish, as Christopher Connell's administratrix, intervened and sought to enforce the divorce judgment. Following an extensive hearing on this matter, the trial court denied Amy Connell's motion, ordering that the judgment "shall remain in full force and effect." See the opinion of the Court of Civil Appeals, Connell v.Parish, 808 So.2d 27, 28 (Ala.Civ.App. 2000).
Amy Connell appealed. A divided Court of Civil Appeals reversed, holding that because the statutory 30-day period had not expired, the order was not final and the divorce action was abated. The main opinion today errs, for the same reason that the Court of Civil Appeals erred, by divorcing this case from the clear and controlling precedent of Ex parteAdams, 721 So.2d 148 (Ala. 1998), and by confusing the lack of finality with the requirements of equity and vacatur.
There is no reason to depart from the holding in Jones v. Jones,517 So.2d 606 (Ala. 1987). In both Adams and Jones, as well as the instant case, the trial court issued a divorce judgment that was not final. In Jones, the trial court introduced its order with the words "This matter coming for hearing on certain temporary issues." (Emphasis added.) See 517 So.2d at 607. The husband, Otto Jones, died in a traffic accident shortly thereafter; a conveyance the temporary order called for the wife to make still had not been made. The trial court correctly applied this common-law principle stated in Adams:
 "Because a cause of action for divorce is purely personal, it is generally recognized that, upon the death of either spouse, such a cause of action terminates or, if [a] divorce action has been commenced, the action abates."
Adams, 721 So.2d at 149.
In Adams, however, Mr. and Ms. Adams entered a final and complete property-settlement agreement into the record. When the husband subsequently committed suicide, before the trial judge had signed the judgment, Barbara Adams sought to enforce the terms of their agreement. This Court, recognizing that the divorce judgment was not final, reversed the judgment of the Court of Civil Appeals, which had affirmed the trial court: *Page 35 
 "[T]he trial judge found that the agreement was final. There were no other issues to be decided and all that remained was for the trial court to sign the judgment.
". . . .
 "Under the peculiar facts of this case, we conclude that the husband's death did not make the final agreement unenforceable."
Adams, 721 So.2d at 149-50. (Emphasis added.)
In the instant case, as in Adams, the husband committed suicide after the parties had reached a complete and comprehensive property settlement, which appeared on the record. The only obstacle to finality was a technical requirement — a judge's signature in Adams and the running of a 30-day waiting period in the present case. Judge Thompson and Judge Crawley, in dissent, properly distinguished between the lack of finality and the enforceability of the trial court's order. In his concurrence in Adams, Justice Cook recommended the application of thenunc pro tunc doctrine in this situation:
 "`The rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused . . . [by] any . . . cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up.'"
721 So.2d at 151 (Cook, J., concurring specially) (quoting Hornsby v.Sessions, 703 So.2d 932, 942-43 (Ala. 1997) (quoting in turn Mitchell v.Overman, 103 U.S. (13 Otto) 62, 64-65 (1880)). "Any judgment nunc protunc indulges in a fiction. But it is a useful one, advancing the ends of justice." Parker v. Ellis, 362 U.S. 574, 598 (1960) (Douglas, J., dissenting) (quoted by Justice Cook in his special concurrence inAdams).
Independently, Amy Connell's effort to gain a larger share of her husband's estate, her apparent reason for trying to nullify a settlement that she had agreed to while her husband was alive, violates classic principles of equity. In J M Bail Bonding Co. v. Hayes, 748 So.2d 198,199 (Ala. 1999), this Court stated:
 "This Court has recognized that one `who seek[s] equity must do equity' and `one that comes into equity must come with clean hands.' Levine v. Levine, 262 Ala. 491, 494, 80 So.2d 235, 237 (1955). The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party's own wrongful conduct renders the assertion of such legal rights `contrary to equity and good conscience.' Draughon v. General Fin. Credit Corp., 362 So.2d 880, 884 (Ala. 1978)."
Alabama's appellate courts have applied the equitable doctrine of "clean hands" in numerous divorce cases. See Borcicky v. Borcicky,763 So.2d 265 (Ala.Civ.App. 2000), Holman v. Holman, 612 So.2d 492
(Ala.Civ.App. 1992), Hilson v. Hilson, 598 So.2d 955 (Ala.Civ.App. 1992), Lowe v. Lowe, 466 So.2d 969 (Ala.Civ.App. 1985), Adams v. Adams,368 So.2d 552 (Ala.Civ.App. 1979), and Burson v. Burson, 363 So.2d 778
(Ala.Civ.App. 1978).
The facts in this case are far closer to those of Adams than to those of Jones. The Connells had agreed, on the record, to every aspect of their divorce settlement. The trial court's judgment reached the correct result for the correct reason. I therefore respectfully dissent. *Page 36